IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RUTH L. ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:16-cv-879-WKW |
| | ) | [wo] |
| DOTHAN POLICE OFFICER | ) | |
| SHANE ASH, in both his individual | ) | |
| and official capacities, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 5, filed November 10, 2016). Pending before the Court is Plaintiffs' Motion for an Injunction (Doc. 2, filed November 8, 2016) and Plaintiff's Motion for Sanctions (Doc. 17, filed December 20, 2016). The Court held several status conferences on the matters as well as an evidentiary hearing. After a careful review of all pleadings, evidence presented, and oral argument, it is the Recommendation of the Magistrate Judge that Plaintiff's Motion for Preliminary Injunction (Doc. 2) and Motion for Sanctions (Doc. 17) be DENIED.[1]

### I. PARTIES

Plaintiff Ruth L. Robinson ("Robinson" or "Plaintiff") is an attorney who represents James Bailey ("Bailey"). Bailey is an inmate at Holman Correctional Facility who was apparently

---

[1] Also pending before the Court is Defendant's Motion to Dismiss / Motion for Summary Judgment (Doc. 9) wherein Defendant seeks dismissal for qualified immunity. The Court finds that while the issues contained within the preliminary injunction and motion for summary judgment are intertwined, they need not be addressed concurrently in this opinion. A Report and Recommendation regarding the issue of qualified immunity will be issued shortly. The Court merely addresses the issues in turn. Further, as this recommendation does not require additional litigation from the Defendant, it does not act as a *de facto* denial of qualified immunity.

convicted in Henry County, Alabama for drug-related activity, which the Plaintiff alleges was a wrongful conviction due to the illegal conduct of the investigating officer(s).

Defendant is Dothan police officer Shane Ash ("Defendant" or "Ash") who is sued in his official and individual capacity. Defendant obtained the search warrant which resulted in seizure of Robinson's phone.

## II. JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for the state law claims.

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## III. NATURE OF THE CASE & MOTION FOR PRELIMINARY INJUNCTION

Robinson initiated this action on November 8, 2016. *See* Doc. 1, "Complaint." She brings the action under 42 U.S.C. § 1983 and state law. Robinson represents Bailey (a post-conviction petitioner) in Houston County and Henry County, Alabama. In her complaint, Robinson alleges that in the course of representing Bailey she approached Danielle Whittington as a witness. *See* Doc. 1 at p. 4. Danielle Whittington may be a confidential information in Bailey's Houston County case which resulted in drug conviction which ultimately culminated in Bailey's murder conviction in Henry County, Alabama. *Id*. On October 5, 2016, Robinson received information that Whittington had information on Bailey's cases and attempted to reach Whittington through her mother. *Id*. Shortly thereafter, Whittington called Robinson to discuss

that she worked as a confidential informant for the police and had dated Terry Nelson, a current Dothan City police officer, who also was the arresting officer in Bailey's Houston County case. Whittington then indicated she would call Robinson back, but later sent a text that she was out of minutes on her cell phone. On October 6, 2016, Robinson arrived in Newton, Alabama around 10:00 p.m. in anticipation of a hearing on Bailey's case on Friday morning. Despite the late hour, Plaintiff went to Whittington's house in Dale County, Alabama to see if Whittington was available to talk. She was told that Whittington was not available and left. The next morning, Robinson called Whittington's phone and left a voicemail. At the beginning of the Bailey hearing, District Attorney Douglas Valeska accused Robinson of stalking the investigating officer in the Bailey case. After the hearing, Robinson was detained outside the courtroom and her cell phone was seized pursuant to a search warrant obtained by Defendant Ash. The search warrant was issued by Judge Mike Conaway (20th Judicial Circuit of Alabama) which allowed for the search and seizure of Robinson's cell phone. *See* Doc. 1, Exhibit A; Doc. 21, Exhibit 1. The search warrant allows for the search and seizure of following property:

(1) Any and all digital evidence linked to the crime of intimidating a witness.
(2) Any and all media and storage devices to include, but not limited to, sim memory card that may contain call logs, text messages, or any digital data *note* searching authorities to examine all the stored data to determine whether it is included in the warrant.
(3) Data security device information to enable access to computer information to include, but not limited to, information or items designed to restrict access or hide computer software, or other programming code, a password (a sting of alpha-numeric characters) to unlock a security device, or data security software of digital code that may include "hot" keys.
(4) Any and all communications, emails, pictures, phone directory lists, and call logs.

*NOTE* This requires searching authorities ot examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored. Additionally, searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment and it would be generally

> impossible to accomplish this kind of data search on site or within a ten day period allowed in search warrants.

*Id*. There is no reference to the subject (Robinson) being an attorney or any restrictive measures on reviewing privilege material in either the "Application and Affidavit for Search Warrant" or the Search Warrant. The warrant was executed on October 7, 2016 in a neighboring jurisdiction.

In conjunction with her November 8, 2016 complaint, Plaintiff also filed a motion for temporary restraining order and preliminary injunction. *See* Docs. 1-2. In the complaint and request for a permanent injunction, Plaintiff requests a declaratory judgment that the contents of the cellular phone contain protected communications which are not subject to the defendant's search and that the search warrant is facially invalid as it lacks particularity and contains no limiting instructions. Plaintiff further requests an injunction regarding the phone and its contents – specifically return of the phone and an order to delete any information obtained from the phone. *See* Doc. 1. In the motion for temporary restraining order, Plaintiff sought the immediate return of the phone and an order stopping the search of the phone's contents as the information contained on the phone is protected by attorney-client privilege. *See* Doc. 2.

On November 9, 2016, the District Judge denied the temporary restraining order and referred the request for a preliminary injunction to the undersigned for further proceedings and recommendation. *See* Docs. 3, 5. The temporary restraining order was denied for three reasons: (1) She did not allege concrete facts to support the need of a temporary restraining order as she waited an entire month from the date of seizure to filing this lawsuit, (2) she did not submit a verified complaint or affidavit, and (3) she did not submit the certification required by Fed. R. Civ. P. 65(b)(1)(B). *See* Doc. 3.

On November 15, 2016, Plaintiff filed an affidavit in support of her request for a preliminary injunction. *See* Doc. 6. Given the nature of the allegations and the concerns about

the seeming lack of protection over privileged matters, the Court ordered an early status conference to determine the current status of the cell phone at issue. *See* Doc. 8. The Court further ordered Plaintiff to file a comprehensive brief in support of her request for a preliminary injunction to include appropriate case law and other legal authorities. *Id*.

On November 30, 2016, Defendant filed his Motion to Dismiss stating the Complaint failed to meet basic pleading standards and also to assert qualified immunity. With regard to qualified immunity, Defendant's entire assertion rests upon the issuance of a search warrant.

On December 2, 2016, the Court held its first status conference in the matter. Robinson proceeds *pro se*. At the status conference, the Court inquired as to the status of the investigation to which the Defense counsel responded that it was on-going, but had no information on the timeline relating to the review of the phone or the matter of protecting attorney-client privilege. As such, the Court took a brief recess to allow counsel to contact his client. After the break, counsel indicated the investigation was still ongoing, additionally evidence of a separate criminal action may have been found, and the officer should have the necessary evidence it needed soon. The Court instructed the Defendant to either return the phone by the following Friday or to explain why the phone would be needed longer. The Court was also given assurances that protection was being given to privileged matter, but no specific details were provided or requested at that time. The Court set a follow-up telephonic status conference for Friday, December 9, 2016. *See* Doc. 12.

On December 6, 2016, Plaintiff timely filed her brief in support of her motion for preliminary injunction. *See* Doc. 13. In the brief, Plaintiff asserts the preliminary injunction should still issue because it is needed to protect the content of the cell phone that had been duplicated by Defendant. She specifically asserts Defendant is trying to "frame the Plaintiff for

some crime." *Id*. at p. 2.  She further avers that this Court should protect privileged data and specify a search protocol to clearly establish what is and is not authorized for the search.  She further asserts that the true purpose for seizing the phone was not as stated, but rather to stop her zealous representation of Bailey in his pending cases, to intimidate and harass her, and in short "to shut her up and shut down her efforts of speaking out against law enforcement."  *Id*. at p. 6.  She asserts to permit such an action would chill the speech and representation by most attorneys representing criminal defendants.   Plaintiff argues that her free speech was infringed upon and the search warrant is facially invalid as it acts as a general warrant with no particularity or specificity as to how the phone can be searched.

Prior to the deadline for the defendant's pleadings, Plaintiff filed a renewed motion for temporary restraining order and a first motion for sanctions.  *See* Doc. 17.  In the motion, Plaintiff alleged Defendant (and other members of the police department) were improperly discussing the contents of Plaintiff's cell phone to peers in other law enforcement departments and the press.  Plaintiff further alleges the Defendant added a password to the phone in order to prevent her from accessing it.  *Id*.  On December 20, 2016, the Court again denied the renewed request for the temporary restraining order as Plaintiff had once again failed to comply with Fed. R. Civ. P. 65.  *See* Doc. 18.  However, in light of the new factual allegations, the Court set a second in-person status conference and briefing schedule on the motion for sanctions.  *See* Doc. 19.

On December 22, 2016, Defendant filed its evidentiary submission in support of his motion to dismiss (which the Court had converted to a summary judgment) and the response to Plaintiff's motion for preliminary injunction and sanctions.  *See* Doc. 21.  In the response, Defendant argues that the search warrant presumptively establishes qualified immunity.

After consideration of all the written submissions, the Court set the matter for an evidentiary hearing on January 31, 2017. After receiving the numerous written submissions, evidence submitted at the hearing, and upon consideration of the oral arguments by counsel, the motion is fully ripe for the Court's consideration. After receiving the numerous written submissions, evidence submitted at the hearing, and upon consideration of the oral arguments by counsel, the motions are fully ripe for the Court's consideration.

### IV. DISCUSSION AND ANALYSIS ON PRELIMINARY INJUNCTION

Though this case involves both questions of state and federal law, whether or not to grant or deny a preliminary injunction is reviewed under the auspices of federal law. *See Ferrerro v. Assoc. Materials, Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991); *see also Mitsubishi Intern. Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1525 (11th Cir. 1994) (citing *Ferrerro* and stating "[u]nder Fed. R. Civ. P. 65, federal law, rather than [state] law, governs the grant of a preliminary injunction to preserve the relative positions of the parties until a trial on the merits can be held.").

"The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001) (quoting *Northeastern Fl. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fl.*, 896 F.2d 1283, 1284 (11th Cir. 1990)). The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002) (citations omitted). The party seeking the preliminary injunction bears the burden of establishing its entitlement to relief. *Scott v. Roberts*, 612 F.3d 1279, 1289 (11th Cir. 2010).

To obtain a preliminary injunction, the moving party must establish the following prerequisites: "(1) a substantial likelihood of success on the merits; (2) that it will suffer

irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest." *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015) (citing *Burk v. Augusta-Richmond Cnty.*, 365 F.3d 1247, 1262-63 (11th Cir. 2004); *see also American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (stating same 4 requirements). "[A] preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *GeorgiaCarry.Org*, 788 F.3d at 1322 (quoting *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3 1165, 1166 (11th Cir. 2001)); *accord Café 207, Inc. v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir. 1993) ("A preliminary injunction is a drastic remedy and [the movant] bears the burden to clearly establish each of the four prerequisites."); *see also Texas v. Seatrain Int'l S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) ("[G]ranting a preliminary injunction is the exception rather than the rule." and movant must clearly carry the burden of persuasion). The moving party's failure to demonstrate a single element may defeat the request regardless of the party's ability to establish any of the other elements. *See, e.g., Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (failure to show irreparable injury); *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) (failure to establish substantial likelihood of success on the merits).

For the extraordinary remedy of a preliminary injunction, Plaintiff's request for a preliminary injunction fails on different elements. In this case, the injunctive relief sought is exceptionally broad and in essence, requests this Court to issue an order stopping all further investigations against Plaintiff with the exception of the original allegation of witness intimidation. She also seeks destruction and information on all evidence gathered and resulting

from the phone search and seizure.

The Court makes no determinations as to the ultimate merits of Plaintiffs' First and Fourth Amendment claims. However, at this stage in the litigation, Plaintiff has not yet tipped the balance of the weight of this element one (substantial likelihood of success on the merit) in her favor. There may be significant issues that relate to the search warrant as to probable cause, scope, and particularity, but the fact remains is that Defendant did obtain a warrant and conducted a search pursuant to that warrant. As such, at this nascent stage in the proceedings, the existence of a warrant cuts against Plaintiff's assertions. While Plaintiff certainly attempts to challenge the sufficiency of the warrant, her request simply is not a matter to be resolved by means of a preliminary injunction. Whether a First and Fourth Amendment Constitutional violation occurred and was clearly established to overcome qualified immunity is the "meat and potatoes" of her lawsuit. Thus, Plaintiff fails to establish this element sufficient for the issuance of a preliminary injunction as articulated in her brief. *See* Doc. 13 at p. 15-16.

The Court now turns to elements two and three – irreparable injury without the injunction and threatened injury outweighs possible harm. As previously noted, the Court required Defendant to return the phone to Plaintiff. As such, Defendant no longer has physical possession of the phone nor is there an ongoing search of new information coming in on the phone through texts, emails, etc. As a result, that portion of the original preliminary injunction request is moot and the remaining request by Plaintiff relates solely to the information already obtained from the downloaded information and cloning of the phone. Plaintiff concedes this point in her brief. *See* Doc. 13 at p. 3, n. 1.

The Court certainly has concerns about the protection of attorney-client privilege. Some statements made on behalf of the defendant by his counsel seem to indicate that there is very little

compartmentalization of the information obtained from the phone. But at this stage, even if Plaintiff's assertions are true, the information is already compromised to the extent law enforcement has seen downloaded the information and reviewed it in accordance with the search warrant. There is no indication that the information on the phone (both privileged and non-privileged) is being disseminated beyond the original download and the involvement by federal investigators.[2]

Plaintiff's preliminary injunctive request seeks a broad scope which would not maintain the status quo, but rather seeks to halt any further investigation into the allegations (both original and later discovered) and give Plaintiff an advantage that normally an investigatory subject would not have. Again, the primary purpose of a preliminary injunction is to maintain the status quo until the merits can be adjudicated. The investigations by both the Dothan police department and one of the federal law enforcement agencies had already begun when this civil lawsuit was initiated. Moreover, when conducting a search, law enforcement is not required to ignore evidence discovered in the course of a search which indicates a different crime than that originally alleged.

The irreparable injuries that Plaintiff *may* experience are continued investigations, possible criminal prosecution, possible administrative investigation/action by the Alabama Bar Association, and what becomes of the information currently in law enforcement's possession. All three are certainly serious, but to date, the only injuries that have occurred are criminal investigations. Assuming, without deciding, that this constitutes an "irreparable injury," Plaintiff still fails to overcome element three in that harm to the opposing party is outweighed by the

---

[2] Plaintiff claims that officers improperly spoke to members of the press. However, Plaintiff herself provided the bulk of the information to various members of the press and the Court did not find that any privileged information was disclosed by the defendant or anyone else in the department.

irreparable injury. The Dothan police department, as a law enforcement agency certainly has the authority and mandate to investigate allegations of criminal wrongdoing. Further, Defendant also has the right to involve other law enforcement agencies when the scope involves different jurisdictions. To issue an injunction against Defendant and any other investigative agencies would cause harm to their investigative authority. Further, the threat of prosecution is certainly minimized by the Dothan District Attorney having determined that it would not be prosecuting the original allegation of witness intimidation which only leaves the possible federal investigation.

One question that remains is what becomes of the information obtained through the search warrant. But, nothing presented by Plaintiff establishes that there is danger of Defendant improperly releasing that information at this juncture or inappropriately releasing privileged information. Law enforcement agencies regularly come across privileged information during the course of their investigations and also have a mandate to minimize the scope of the review to protect the privilege. While there are certainly "red flags" as to how well the Defendant has accomplished that minimization, the Court has inadequate information at this stage to indicate that a preliminary injunction is necessary.

Finally, the Court turns to whether an injunction would disserve the public interest. Even if the Plaintiff had established the first three elements, she clearly fails here because the scope of her request is far broader than would serve the public interest. Plaintiff seeks a preliminary injunction which would require:

(a) barring the Defendant from keeping, sharing, or using any information procured from the Plaintiff's cell phone that is not related to the alleged crime of "intimidating a witness" of "Danielle Whittington;"

(b) directing the Defendant to destroy any and all information procured from the

Plaintiff's cell phone that is not specifically within the jurisdiction of a municipal officer pursuant to Alabama Code Section 15-5-5 and 15-5-7 for the crime of intimidating a witness;

(c) barring the Defendant and any agent or officer working on his behalf from continuing to monitor of investigation the Plaintiff through the information collected from the Plaintiff's cell phone, including by not limited to her e-mail, web queries, and phone metadata;

(d) directing the Defendant and all other agents or officers working with the Defendant or local area law enforcement to destroy any and all information obtained about the Plaintiff, her family, her clients and anything else that is irrelevant to the crime of intimidating a witness of Danielle Whittington;

(e) prohibiting the Defendant and his agents or fellow officers from querying data currently in his possession using e-mail address(es) or phone number(s) associated with the Plaintiff; and

(f) providing a list of every file and/or piece of metadata the Defendant believes he is authorized to keep to prove a crime against the Plaintiff that was procured from the Plaintiff's cell phone.

*See* Doc. 13 at p. 15-16. Put simply, Plaintiff wants this Court to control the scope of the criminal investigation and limit what law enforcement may pursue against her. However, Plaintiff's request ignores the simple reality that investigations often expand in scope as they proceed. Though law enforcement may start an investigation with one allegation, the ensuing investigation may reveal other crimes or no crimes at all. There is nothing abnormal about that process. Further, in the course of an investigation, the relevance of information obtained may not be

initially apparent but later be obviously relevant. As such, the Court will not require Defendant to ignore the law and common sense by deleting information and limiting the scope of the investigation.

Finally, having a federal court shut down an investigation (even if potentially wrongfully motivated) does not serve the public interest. Plaintiff's request would put her in a better position than most investigatory subjects by getting early access to investigatory materials and having a federal court supervise a locally run investigation. It is not for this Court to manage the criminal investigations of local law enforcement – rather that is a role for the local judges and district attorney's office.

The Court notes that the denial of the preliminary injunction does not constitute a ruling on the merits of the case. Rather an acknowledgment that a preliminary injunction is simply not the appropriate remedy at this step. The Court will review the case further in its analysis of whether qualified immunity is appropriate at this nascent stage of the proceedings. Denial of a preliminary injunction does not negate other remedies available to Plaintiff should this case survive Defendant's assertion of qualified immunity.

### V. MOTION FOR SANCTIONS

Plaintiff also filed her motion for sanctions. *See* Doc. 17. She alleges that Defendant and his supervisors at the Dothan Police Department have improperly disclosed to the press information regarding the underlying investigation. Plaintiff also alleges that when Defendant returned the cell phone at issue it had been materially altered with the addition of a passcode and installation of spyware. Because of the nature of the allegations, the Court set the matter for accelerated briefing and hearing. *See* Doc. 19. The Court held a hearing on December 27, 2017.

To start, though Plaintiff is a licensed attorney, she proceeds *pro se* in this matter. Prior to

the hearing, a motion to appear *pro hac vice* was filed by Donald Robinson. At the hearing, it was determined that Mr. Robinson did not appear for the purposes of fully representing Ms. Robinson, but rather appeared as co-counsel. However, he made no argument or assertions to the court in the course of any proceedings thus far. As such, all statements referencing "Plaintiff" below are specific to Ruth Robinson.

At the hearing, in response to the Court's inquiries, Plaintiff confirmed that she had not complied with the requirement to confer in good faith with her opposing counsel prior to filing the motion. Though she proceeds *pro se*, Plaintiff is not relieved of her obligation under the rules – to include conferring with opposing counsel in an attempt to resolve issues prior to involving the Court. Next, it became abundantly clear during the hearing that Plaintiff grossly exaggerated the claims she presented in her motion for sanctions. This specifically pertains to the fact she *also* clearly is communicating with the same reporter at the New York Times regarding her case and providing her information about the case. This results in the reporter seeking confirmation from the police department. Plaintiff obviously did not disclose this to the Court in her motion, but rather made it appear that she merely "found out" that the police department was speaking to the media. Additionally, despite her allegations against Defendant regarding inappropriate press communications, it is clear that Plaintiff also continued to speak to the press to include some discussion of this case. *See e.g.,* Leon Neyfakh, *James Bailey is a Liar. Is He a Murderer*, SLATE, (Feb. 7, 2017),
http://www.slate.com/articles/news_and_politics/crime/2017/02/will_new_evidence_in_a_dothan_alabama_murder_case_prove_james_bailey_is.html.

Further, it is clear that she also misrepresented the necessity to wipe the cell phone at issue. In her motion, Plaintiff states in a footnote that the addition of a passcode resulted in her spending

"many hours working with an Apple Store "Genius" in an unsuccessful effort to restore the full contents of the cell phone which ultimately were entirely lost. [She] is seeking sanctions for the time spent dealing with Defendant's shenanigans." Further, in communication she had with opposing counsel after-the-fact, she also affirmatively stated that "the phone has something now installed on it that has breached the normal apple security" and "because of the spyware install on the phone, I will need to buy a new phone because, otherwise, the cops intercept all new information the phone might receive based on a little number inside the phone. Even after resetting it, so I am told by Verizon and Apple, it still will have this mirroring software that the police have installed without the requisite federal wiretapping warrants. Thus I will be forced to lose all information on the phone because the officer put a passcode on it and installed spyware. Is how it is looking, anyway." *See* Doc. 21, Ex. 1-I. At the hearing, Plaintiff stated in response to Court questioning that she did not know whether spyware had been added, but merely speculated that it is possible defendant or the police department could have added some sort of spyware and so she decided to wipe the phone. She did not request the password from the opposing counsel, but rather made the decision on her own to have the phone wiped in order to access it and wipe any spyware added. This hypothetical possibility is very different than presented in her communication with counsel where she indicated that not only was spyware affirmatively detected, but that the phone was now rendered useless because it could not be wiped.

Plaintiff's behavior in the filing of the motion and her email to opposing counsel tread on the wrong side of her obligations under Fed. R. Civ. P 11 and Fed. R. Civ. P. 37. Based on the above, the Court finds that Plaintiff's request for sanctions lacks merit.

## V. Conclusion

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that the Motion for

Preliminary Injunction (Doc. 2) and subsequent injunctive requests (Docs. 13, 17) be **DENIED**. Additionally, Plaintiff's Motion for Sanctions (Doc. 17) should be **DENIED**.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation on or before **August 31, 2017**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 17th day of August, 2017.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE