IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RUTH L. ROBINSON,                    )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )      CASE NO. 1:16-cv-879-WKW
                                     )      [wo]
DOTHAN POLICE OFFICER                )
SHANE ASH, in both his individual    )
and official capacities,             )
                                     )
        Defendant.                   )

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States

Magistrate Judge for review and submission of a report with recommended findings of fact and

conclusions of law (Doc. 5, filed November 10, 2016).   Pending before the Court is Defendant's

Motion for Summary Judgment (Doc. 9, filed November 30, 2016).[1]   The Court held several

status conferences on the matters as well as an evidentiary hearing.   After a careful review of all

pleadings, evidence presented, and oral argument, it is the Recommendation of the Magistrate

Judge that the Defendant's motion be DENIED without prejudice to reassert after discovery.[2]

### I.    PARTIES

Plaintiff Ruth L. Robinson ("Robinson" or "Plaintiff") is an attorney who represents James

Bailey ("Bailey").   Bailey is an inmate at Holman Correctional Facility who was apparently

---

[1]      The docket sheet seemingly reflects two separate motions; however, the Court converted
the motion to dismiss to a motion for summary judgment.   As such, there is only one pending
motion to address with several associated filings.

[2]      Also pending before the Court are a motion for preliminary injunction and motion for
sanctions.   The undersigned issued a report and recommendation on those motions on August 17,
2017.   *See* Doc. 32.

convicted in Henry County, Alabama for drug-related activity, which the Plaintiff alleges was a wrongful conviction due to the illegal conduct of the investigating officer(s).

Defendant is Dothan police officer Shane Ash ("Defendant" or "Ash") who is sued in his official and individual capacity. Defendant obtained the search warrant which resulted in seizure of Robinson's phone.

## II.   JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for the state law claims of false imprisonment, conversion, and invasion of privacy.

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## III.   BACKGROUND

The Court previously articulated the facts of this case in its Report and Recommendation on the motion for preliminary injunction and incorporates all those facts here. However, the Court will also reiterate the relevant facts as they relate to the issue of qualified immunity and the *Younger* abstention doctrine. Additionally, as further discussed the Court necessarily views the facts in favor of Plaintiff as the non-movant.

Robinson represents Bailey (a post-conviction petitioner) in Houston County and Henry County, Alabama. In her complaint, Robinson alleges that in the course of representing Bailey she approached Danielle Whittington as a witness. *See* Doc. 1 at p. 4.[3] Danielle Whittington

---

[3]      With regard to the use of page numbers in this opinion, the Court refers to the page

was a confidential informant in Bailey's Houston County case which resulted in drug conviction which ultimately culminated in Bailey's murder conviction in Henry County, Alabama. *Id*. On October 5, 2016, Robinson learned that Whittington likely had information on Bailey's cases and attempted to reach Whittington through her mother. *Id*. Shortly thereafter, Whittington called Robinson to discuss her participation as a confidential informant for the police and that she had dated Terry Nelson, a current Dothan City police officer, who also was the arresting officer in Bailey's Houston County case. *Id*. Whittington then indicated she would call Robinson back, but later sent a text that she was out of minutes on her cell phone. On October 6, 2016, Robinson arrived in Newton, Alabama around 10:00 p.m. in anticipation of a hearing on Bailey's case on Friday morning. Despite the late hour, Plaintiff went to Whittington's house in Dale County, Alabama to see if Whittington was available to talk. She was told that Whittington was not available and left without incident. The next morning, Robinson called Whittington's phone and left a voicemail.

At the beginning of the Bailey hearing, then District Attorney Douglas Valeska accused Robinson of stalking the investigating officer (Allen Hendrickson) in the Bailey case. After the hearing, Robinson was detained outside the courtroom and her cell phone was seized pursuant to a search warrant obtained by Defendant Ash. The search warrant was issued by Judge Mike Conaway (20th Judicial Circuit of Alabama) which allowed for the search and seizure of Robinson's cell phone. *See* Doc. 1, Exhibit A; Doc. 21, Exhibit 1. The warrant allows for the search and seizure of following property:

(1) Any and all digital evidence linked to the crime of intimidating a witness.
(2) Any and all media and storage devices to include, but not limited to, sim memory card that may contain call logs, text messages, or any digital data

---

numbers used on the docket printouts which may not always align with the pages numbers on the parties' briefs.

*note* searching authorities to examine all the stored data to determine whether it is included in the warrant.
(3) Data security device information to enable access to computer information to include, but not limited to, information or items designed to restrict access or hide computer software, or other programming code, a password (a sting of alpha-numeric characters) to unlock a security device, or data security software of digital code that may include "hot" keys.
(4) Any and all communications, emails, pictures, phone directory lists, and call logs.

*NOTE* This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored. Additionally, searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment and it would be generally impossible to accomplish this kind of data search on site or within a ten day period allowed in search warrants.

*Id.* (typographical errors in original). There is no reference to the subject (Robinson) being an attorney or any restrictive measures on reviewing privilege material in either the "Application and Affidavit for Search Warrant" or the Search Warrant. The warrant was executed on October 7, 2016 in a neighboring jurisdiction.

On November 30, 2016, Defendant filed his Motion to Dismiss stating the Complaint failed to meet basic pleading standards and also asserts qualified immunity. With regard to qualified immunity, Defendant's entire assertion rests upon the issuance of a search warrant.

On December 2, 2016, the Court held its first status conference in the matter. Robinson proceeds *pro se* though she is a licensed attorney.[4] At the conference, the Court inquired as to the status of the investigation to which Defense counsel responded that it was on-going, but had no information on the timeline relating to the review of the phone or the matter of protecting attorney-client privilege. As such, the Court took a brief recess to allow counsel to contact his

---

[4] As noted in the prior Report and Recommendation, on or about December 27, 2017, Donald Robinson filed a motion to appear *pro hac vice*. However, it was determined that he did not appear for the purposes of fully representing Plaintiff, but rather as silent co-counsel.

client.  After the break, counsel indicated the investigation was still ongoing, additional evidence of a separate criminal action may have been found, and the investigation should be completed soon.  The Court instructed the Defendant to either return the phone by the following Friday or to explain why the phone would be needed longer.  The Court was also given assurances that protection was being given to privileged matter, but no specific details were provided or requested at that time.  The Court set a follow-up telephonic status conference for Friday, December 9, 2016.  *See* Doc. 12.

On December 6, 2016, Plaintiff timely filed her brief in support of her motion for preliminary injunction which also relates details as to her claims.  *See* Doc. 13.  She specifically asserts Defendant is trying to "frame the Plaintiff for some crime."  *Id*. at p. 2.  She further asserts that the true purpose for seizing the phone was not as stated, but rather to stop her zealous representation of Bailey in his pending cases, to intimidate and harass her, and in short "to shut her up and shut down her efforts of speaking out against law enforcement."  *Id*. at p. 6.  Plaintiff avers that to permit such an action would chill the speech and representation by most attorneys representing criminal defendants.  Plaintiff claims Defendant infringed upon her First Amendment right to free speech and violations of the Fourth Amendment because the search warrant is facially invalid as it acts as a general warrant with no particularity or specificity as to how the phone can be searched.

On December 9, 2016, the Court entered an order relating to both the motion for preliminary injunction and the Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Specifically, the Court stated:

> At present, Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) makes conclusory assertions of qualified immunity while Plaintiff has filed several pieces of evidence in support of her request for a preliminary injunction.  Thus the Court faces motions utilizing contradictory standards of review which ultimately

relate to connected matters. Moreover, based on the underlying issues, the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny is likely implicated. Nonetheless, the Court finds the matter of the seizure of an attorney's phone to be a very serious matter that necessitates the review of the present motions at an early stage of the lawsuit.

Based on the current posture of the case and the motions filed, the Court finds it must consider evidence in support of both requests and the motion to dismiss is converted to a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. Therefore, Defendant may file a supplemental brief in support of his qualified immunity defense to include evidentiary materials (such as documents, affidavits, or sworn statements).

*See* Doc. 16. Defendant timely filed his evidentiary submission in support of the converted motion for summary judgment on December 22, 2016. *See* Doc. 21. The evidentiary submission was a combined response to the Court's order and Plaintiff's motions for preliminary injunction and sanctions. In the response, Defendant argues that the search warrant presumptively establishes qualified immunity. Defendant further argues the search warrant is presumptively valid, not overly broad, and evidence found on the phone of another crime constitutes "plain view" evidence. Finally, Defendant states the *Younger* abstention doctrine requires abstinence by this court from the underlying criminal proceeding. *Id.*

Defendant attaches his affidavit in support of his assertions. *See* Doc. 21, Exhibit 1. Defendant states that on October 6, 2016, Allen Hendrickson reported to the Dothan Police Department that Ruth Robinson had threatened, intimidated and harassed him to include accusations and disparaging remarks on social media. Defendant states Hendrickson stated he felt intimidated and threated because of the accusations that he suppressed information relevant to Bailey's criminal charges, references to tapes being held by someone which could be damaging to him, and the overall tone of the letter. Defendant states Hendrickson said he wanted to press charges against Robinson and that the police should also contact Danielle Whittington. *See* Doc. 21, Exhibit 1, p. 2. Defendant Ash contacted Whittington by telephone the same day. Defendant

states Whittington conveyed to him her involvement as a confidential informant in the Bailey case and that Ruth Robinson had attempted to contact her the day prior (October 5, 2016) and her mother relayed the message that Ruth Robinson was seeking her phone number. At the time, Whittington did not know why Robinson was calling. Whittington returned the call the same day and spoke to Robinson. Per Defendant Ash, Whittington stated "Robinson asked her to be in the Houston County Courthouse on October 7, 2016. When asked why, she said Robinson told her she needed to tell the court that Terry Nelson, (a Dothan police investigator) planted drugs in the case against James Bailey and Heather Lyn Brown and that Terry Nelson was framing people for murder. Whittington stated she told Robinson that was false. Whittington told me Robinson was asking her to commit perjury." *See* Doc. 21, Exhibit 1, p. 3. Whittington then also told Defendant that Robinson sent her a text about 10:17 p.m. asking Whittington to call her – which Whittington did not. On October 7, 2017 - two days later – Whittington called Defendant to tell him Robinson had unexpectedly come to her house. Whittington stated she was alarmed because of the prior "criminality of Robinson's previous communication" and that her address was not published. *Id*. at p. 4.

As a result of the above, Defendant states he went to Circuit Judge Conaway's office in the Houston County Courthouse and "discussed Hendrickson and Whittington's statements," "explained Robinson was an attorney," and provided the application and affidavit for a search warrant which Judge Conaway signed. Defendant then faxed the search warrant to the Henry County Sheriff's office and drove to the courthouse with the original. Upon arrival, he found Dothan Police Department Investigator Terry Nelson and Henry County Sheriff's Department Sergeant Eric Blankenship waiting for him. Sgt. Blankenship delivered the seized cell phone and indicated he thought Robinson was trying to delete information when he took it from her.

Defendant then went to the office where Robinson waited and gave her a copy of the search warrant and property receipt. He declined to answer her questions regarding probable cause and indicated she could leave. *See* Doc. 21, Ex. 1 at p. 4-5.

Defendant took the phone back to the police station to start his search of the phone by looking through location services as well as phone calls and texts sent to Danielle Whittington. Return of the search warrant was completed on October 17, 2016. Defendant states the search yielded a deleted text message sent from the phone on October 6, 2017 at 10:17 p.m. stating "[h]ey about to go knock on Danielle's door holy shot [sic]." The search also revealed several photos of James Bailey in prison, facetime chats between Robinson and Bailey, and selfies by Bailey taken in prison and sent to Robinson's phone. *See* Doc. 21, Ex. 1 at p. 6.

Defendant also states in his affidavit that on December 2, 2016 he had a conversation with his defense counsel regarding the possession of the phone and the Court's instruction to return the phone forthwith. He indicated that given the large amount of data on the phone that a search would require quite some time. Defendant states he told his attorney that "we would have to go with a download and could send the phone back to her within a week." *See* Doc. 21, Ex. 1 at p. 6. He further states that as of the date of the affidavit the criminal investigation is ongoing. Attached to the affidavit are facebook screen captures about Allen Hendrickson's involvement in the case including a facebook chat between Hendrickson and a woman named Crystal which states:

Crystal: He is innocent and that is wrong and you know that

Allen: But he was found guilty and that's that. No one in that is innocent you just keep your mouth shut or I will make sure you do I'm done with this Don't text me again

Crystal: He don't deserve that

Allen: Well I didn't put him there his roommate did

*See* Doc. 21, Exhibit 1-A. The next affidavit attachment is a letter from Ruth Robinson to

Hendrickson dated August 28, 2016. The letter references tapes made by Heather Lyn Brown and 2 pages of a transcript from a hearing on May 12, 2008. *See* Doc. 21, Exhibit 1-B. Next, Defendant attaches a 1-page printout of text messages seemingly between Robinson and Whittington[5] as well as another number discussing Whittington and the attempts to reach her. The text messages indicate Robinson was able to reach Whittington's mother for her contact information and that Whittington relayed she was out of minutes. *See* Doc. 21, Exhibit 1-C. The ones highlighted by defense show (a) a message on 10/5/17 at 10:17:23 p.m. from Robinson to Whittington which states "Hey, it's Ruth. I'm still up for a little while if you want to call, (b) a response from Whittington on 10/5/17 at 11:16:16 p.m. which states "Hey, my phone runs out of minutes at 12:00 and I won't have any on here until Friday so I'm not real sure how I'm gonna be able to communicate with you," and (c) Robinson's response on 10/6/16 at 12:17:23 a.m. which states "Oh no." *Id*. Robinson then communicates with another phone number which states Whittington "sent a text that her phone runs out of minutes at midnight. I just got it cuz been asleep," "I have her moms number," Whittington "said she wasn't sure how she would be able to communicate," and "she said she gets new minutes on Friday." *Id*. (typographical errors in original). The single page of text excerpts provided by Defendant are in reverse chronological order from top to bottom. Though not highlighted, at the bottom of the page Robinson is texting with another number stating "She said she had to sit down and write some shit down," "she promised to call back," "She said she had another name for me." There are also some affectionate messages between Robinson and the other number. *Id*. Defendant does not specify to whom the

---

[5] The name highlighted on the messages is "Danielle Peterson." However, there is never an explanation as to the name difference between Whittington and Peterson. For the purposes of the recitation of Defendant's facts, the Court will state Whittington, but will address the discrepancy later in the analysis.

second number belongs.

The next attachments to the affidavit are the search warrant and the Dothan Police Department's documentation of the seizure of the Apple iPhone and a chain of custody log. *See* Doc. 21, Exhibit 1-E and 1-F. The chain of custody log states 10/7/16 seizure – unknown signature for "relinquished by" and Defendant's signature for "received by." *See* Doc. 21, Exhibit 1-F. It also states **10/7/16** Download with Defendant's signature on "Relinquished by" and an unknown signature for "Received by" with the same date and reversed signatures for "Add to Case File." *Id.* (emphasis added for 10/7/16)[6] The final entry is 12/7 with Defendant stating "Returned to owner USPS – Per Federal Judge." *Id.* The Return and Inventory to Judge Conaway occurred on October 17, 2016 wherein Defendant states "Found and seized the following described property: One Apple IPhone seized at the Henry County Courthouse, then downloaded 16.2 gigs of digital data." *See* Doc. 21, Exhibit 1-G.

Defendant also attaches a second page of excerpts from the text message downloads from Robinson's phone. *See* Doc. 21, Exhibit 1-H. These messages are from October 6-7, 2017 and are in reverse chronological order. The earliest highlighted message is from Robinson to an unknown number on 10/6/2016 at 10:18:05 p.m. wherein she states "Hey about to go knock on Danielle's door holy shot [sic]." The next highlighted message is from Robinson to Whittington on 10/7/2016 at 7:40:57 am which states "Hey there. I was trying to meet up with you while I'm in town. I will try and call later." *Id.*

The remaining exhibits primarily pertain to the Plaintiff's motion for sanctions with the exception of the following information. A few paragraphs in the affidavit of Tim Mullis provide

---

[6]    This contradicts the earlier portion of the affidavit on page 6 wherein Defendant states "there was a very large amount of data contained on the phone which would require quite some time to search. He advised we didn't have that long. I told him we would have to go with a download and could send the cell phone back to her within a week."

that he downloaded the cell phone contents on October 7, 2016 and returned the phone to Defendant Ash the same day.   *See* Doc. 21, Exhibit 3.   On October 11, 2016, Mullins generated a PDF report and copied the report to a USB drive which he gave to Defendant.   Then sometime in late November, another officer requested information from the cell phone regarding the crime of promoting prison contraband and inappropriate texts to and from a cell phone used by an inmate in the penitentiary.   On November 22, Mullins produced two copies to the officer which included text messages to and from Bailey, Danielle Peterson, and Frankie McDaniel and pictures of Bailey sent to Robinson's phone.   *Id*.   Doug Magill, an investigator with the Internal Affairs Division of the Dothan Police Department, also submits an affidavit.   *See* Doc. 21, Exhibit 4.   He discusses some of the underlying issues in the Bailey case with regard to documents and allegations of police misconduct as well as his conversations with the Federal Bureau of Investigation (FBI) in Mobile, Alabama.   Further, Magill also disclosed that he relayed the information regarding the second set of allegations against Robinson and the cell phone communications with Bailey. Magill also provided a copy of the text messages to the FBI.   *Id*.

Plaintiff timely submitted her response to the Defendant's motion.   *See* Doc. 25.   She reiterates that the Defendant worked with Hendrickson to improperly procure the search warrant in retaliation for her actions in the representation of Bailey.   She further submits a copy of a purported transcript of a police interview involving Hendrickson as well as a prosecutor's letter referencing the transcript.   She indicates the documents are provided "for the purposes of clarity and this Court's understanding of the depth of the animosity that local law enforcement might feel towards the Plaintiff."   *Id*. at p. 2, n. 2.   She acknowledges that the parties involved in the Bailey lawsuit testified the documents are forgeries, but that she also presented evidence from a forensic document expert of the possibility the letter is authentic.   *Id*. at p. 3.   She further argues that the

various officers involved in the Bailey matter are growing more desperate and fearsome because "the long-lost witness to the police interview…has been located by the United States Federal Marshalls while in hiding in Canada." *Id*. Plaintiff avers the intimidation allegations were false and pretextual. She further argues the search warrant lacked probable cause, the required specificity and particularity, and what evidence Defendant expected to find.

After consideration of all the written submissions, the Court set the matter for an evidentiary hearing on January 31, 2017 and a follow-up conference on August 1, 2017. After receiving the numerous written submissions, evidence submitted at the hearing, and upon consideration of the oral arguments by counsel, the motion is fully ripe for the Court's consideration.

## IV.   STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial. Fed. R. Civ. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Ritchey v. S. Nuclear Operating Co., Inc.*, 423 Fed. Appx. 955 (11th Cir. Apr. 20, 2011) (quoting *Anderson*). At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for

trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. Only disputes about the material facts will preclude the granting of summary judgment. *Id*.

The movant bears the initial burden of proof. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Rule 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Moore, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510)). The court must view the facts and draw all reasonable inference in favor of the nonmoving party. *Id*. (citing *Rosario v. Am. Corrective Counseling Servs, Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita*, 475 U.S. at 586 106 S. Ct. at 1356 (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (emphasis in original). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

## V.    DISCUSSION AND ANALYSIS

Defendant asserted two reasons why this case should be dismissed – the *Younger* abstention doctrine and qualified immunity. As such, the Court will address both, starting with the *Younger* abstention doctrine as it is jurisdictional.

## A.    Younger Abstention Doctrine

"*Younger* abstention is a judicial doctrine, named for *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), where the Supreme Court recognized a limited exception to a federal court's 'virtually unflagging obligation' to exercise its jurisdiction when 'extraordinary circumstances' counsel abstention in favor of pending state proceedings." *Seminole Tribe of Fla. v. Stranburg*, 799 F.3d 1324, 1344 n. 15 (11th Cir. 2015) (citation omitted). "*Younger* and its progeny reflect the longstanding national public policy, based on principles of comity and federalism, of allowing state courts to try cases – *already pending in state court* – free from federal

court interference." *Butler v. The Ala. Judicial Inquiry Comm'n*, 245 F.3d 1257, 1261 (11th Cir. 2001) (emphasis added). Relatively recently, the United States Supreme Court has emphasized that circumstances warranting *Younger* abstention are "exceptional," and the mere pendency of parallel state proceedings is not itself a bar to federal court litigation. *Sprint Commc'ns., Inc. v. Jacobs*, --- U.S. ---, 134 S. Ct. 584, 588, 187 L. Ed. 2d 505 (2013). Exceptional circumstances include "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function." *Id*. (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367-68, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989)); *see also Dandar v. Church of Scientology Flag Serv. Org.*, 619 Fed. Appx. 945, 947 (11th Cir. Aug. 10, 2015) (citing *Sprint* and the three type of exceptional circumstances where *Younger* may apply). The Supreme Court determined these three categories define *Younger's* scope. *Sprint Commc'ns.*, --- U.S. at ---, 134 S. Ct. at 591.

Once the Court finds one of these three circumstances present, then the Court moves to the additional factors to consider. *Id*. at 593 (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982)). These *Middlesex* factors include circumstances in which there is an ongoing state judicial proceeding that implicates important state interests and provides an adequate opportunity to raise federal challenges. *Dandar*, 619 Fed. Appx. at 948.

However, even if one of the three categories is applicable and the *Middlesex* factors favor abstention, *Younger* abstention still is not appropriate when "(1) there is evidence that the state proceedings are motivated by bad faith; (2) irreparable injury would occur; or (3) there is no adequate alternative state forum where constitutional issues can be raised." *Id*. (quoting *Hughes*

*v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1263 n. 6 (11th Cir. 2004)). "To establish the bad faith exception, a litigant must make a substantial allegation that shows actual bad faith. A litigant shows irreparable injury if a state law is flagrantly and patently violative of express constitutional prohibitions. Finally, litigants need only be afforded an opportunity to fairly pursue their constitutional claims in state court in order for *Younger* abstention to be appropriate." *Id*. (internal quotations and citations omitted).

Applying the above legal framework to the case at hand, the Court finds that the *Younger* abstention doctrine is inapplicable. In its evidentiary submission in support of the motion to dismiss and opposition to preliminary injunction, Defendant makes a perfunctory argument that *Younger* applies to the case. *See* Doc. 21 at p. 11-12. However, Defendant makes no effort to discuss the legal requirements for *Younger* to apply. In reaching the determination that *Younger* abstention does not apply to this case, the Court makes the following findings. First, the case does not fall squarely into one of the three categories articulated in *Sprint Communications* – namely there is no pending criminal prosecution, civil enforcement proceeding, or civil proceeding involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function. Though Plaintiff does challenge a state-court issued search warrant, Defendant provides no evidence that a criminal prosecution is underway. Rather, to the contrary, at the evidentiary hearing, Defendant clearly provided evidence that the local district attorney's office has no involvement in the current underlying state investigation and on August 1, 2017, stated no criminal charges would be forthcoming from the state.[7] Further, there are no civil proceedings (akin to a criminal prosecution) which are already pending. A criminal investigation does not

---

[7] At the August 1, 2017 conference, defense indicated that originally an arrest warrant had been procured, but that someone at the district attorney's office had it rescinded. No further explanation was provided.

constitute a criminal judicial proceeding or action. *See, e.g., Newell v. Cty. of Wayne*, Civ. Act. No. 12-cv-14928, 2013 U.S. Dist. LEXIS 123121, *8, 2013 WL 4613613, *3 (E.D. Mich. Aug. 29, 2013) ("There may be an ongoing criminal investigation, but to date, Defendants have not shown that there is a criminal action against Plaintiff. Defendants are unable to show that there are ongoing proceedings against Plaintiff at this time. Defendants have not met the requirements under *Younger* in order for the Court to abstain from this case."). Therefore, Defendant fails to establish that this Court should abstain under the principles of *Younger*.

## B. Stay in the interest of justice

Though the Court already determined that abstention under *Younger* is not applicable, alternatively, a federal court, in its discretion, may stay a civil action when a parallel criminal action is pending if justice so requires. *See United States v. Kordel*, 397 U.S. 1, 12 n. 27, 90 S. Ct. 763, 770 n. 27, 25 L. Ed. 2d 1 (1970). "The granting of a stay of civil proceedings due to pending criminal investigation is an extraordinary remedy, not to be granted lightly." *United States v. Simcho*, 326 Fed. Appx. 791, 792-93 (5th Cir. May 15, 2009) (citing *In re Who's Who Worldwide Registry, Inc.*, 197 B.R. 193, 195 (Bankr. E.D.N.Y. 1996)). Yet, a stay may be appropriate when the facts of the civil and criminal are closely related and can lead to some constitutional issues. *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007). "Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962).

There are numerous factors that should be considered in determining whether a stay is warranted, including: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been

indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest. *See Alcala v. Webb County*, 625 F. Supp. 2d 391, 413 (S.D. Tex. 2009); *United States ex rel. Gonzalez v. Fresenius Med. Care. N. Am.*, 571 F. Supp. 2d 758, 762 (W.D. Tex. 2008); *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 945 (N.D. Ill. 2008); *Chao*, 498 F. Supp. 2d at 1037; *Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995)); *Reed-Veal v. Encinia*, Civ. Act. No. 15-2232, 2016 U.S. Dist. LEXIS 171045, *6-7, 2016 WL 6909378, *2 (S.D. Tex. Mar. 17, 2016) (citations omitted). In *Alcala*, the court determined that factors three through six are really more a single element that simply determines the balancing of interests. 625 F. Supp. 2d at 399-400 (citations omitted). As such, it is for the Court to identify interests before deciding whose rights predominate. This ensures both plaintiff's and defendant's rights are taken into consideration while also considering the court and the public. Then all the rights and interests are evaluated and balanced. Further, the first two factors – extent of overlap and status of criminal cases are also more similar to a single factor rather than two distinct factors.

In this case, the investigation run by Defendant (and the Dothan police department) has concluded with the decision not to prosecute. Therefore, despite the overlap in the cases, the factors do not favor a stay since Plaintiff has no recourse (such as a suppression hearing) through a state criminal prosecution. Additionally, while Defendant may have had an interest in this Court deferring to the local circuit court while there was the possibility of a criminal prosecution, that no longer exists. Though there is a possible federal investigation being conducted, that is not before this Court. Rather, the only interests are those of Plaintiff, Defendant, the Court, and the public. In balancing those various interests, the scales are clearly tipped towards resolution of <u>this</u> case

since it is the only case currently in existence.  As such, a stay is not appropriate.

## C.     Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  Courts utilize a two-part framework to evaluate qualified immunity claims.  The first element is whether the plaintiff's allegations, if true, establish a constitutional violation.  *Pearson*, 555 U.S. at 232, 129 S. Ct. at 815-16 (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001)).  The second element is whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct.  *Id*. at 232, 129 S. Ct. at 816.  "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis maybe done in whatever order is deemed most appropriate for the case."  *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citing *Pearson*).  If a plaintiff fails to establish either one, then the defendant it entitled to qualified immunity.

Qualified immunity is typically addressed at summary judgment, but may be raised on a motion to dismiss and granted if the plaintiff's complaint fails to allege the violation of a clearly established constitutional right.  *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002); *Marsh v. Butler Cty.*, 268 F.3d 1014, 1023 (11th Cir. 2001).  "The Supreme Court has repeatedly stressed the importance of resolving qualified immunity questions at the earliest possible stage in litigation."  *Bloom v. Alvereze*, 498 Fed. Appx. 867, 878 (11th Cir. 2012) (citing *Pearson*, 555 U.S. at 232).  Defendant initially filed its perfunctory motion under Fed. R. Civ. P.

12(b)(6).   However, the motion to dismiss lacked sufficient information and also presented the Court with the difficulty of evaluating a preliminary injunction and a motion to dismiss utilizing conflicting standards of review.   Therefore, the Court converted the motion to an early considered motion for summary judgment.   *See* Doc. 16.   However, the Court also did not correspondingly authorize discovery at the time.

Turning to the case at hand, the Court must apply the above framework to whether Defendant is entitled to qualified immunity.   First and foremost, Plaintiff sued Defendant Ash in both his official and individual capacity and seeks both monetary damages and injunctive relief. *See* Doc. 1.   "Because qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief."   *Ratliff v. DeKalb Cty.*, 62 F.3d 338, 340 n. 4 (11th Cir. 1995).   Next, qualified immunity only protects public officials from lawsuits brought against them in the individual capacity and does not shield public officials from civil damages in their official capacities.   *Harrell v. Decatur Cty.*, 22 F.3d 1570, 1576 (11th Cir. 1994) (citations omitted).[8]   Finally, qualified immunity is a defense only to federal claims and does not protect officials from claims based upon state law. *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995); *Daker v. Steube*, 514 Fed. Apps. 885, 890 (11th Cir. Mar. 27, 2013) (citing *Andreu c. Sapp*, 919 F.2d 637, 640 (11th Cir. 1990)).   As

---

[8]      A claim against a governmental official in his official capacity is a suit against the official's office itself.   *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *see also Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("[S]uits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents."); *Thornton v. City of Montgomery*, 78 F.Supp.2d 1218, 1231 (M.D. Ala. 1999) (quoting *Graham*).   Therefore, official capacity claims against Defendant Ash are claims against the City of Dothan.   However, Defendant does not address any of this in the motion, so the Court need not address it at this time given the early stage of this lawsuit.

such, it is clear that a decision on qualified immunity would not apply to the claims for injunctive relief, state law claims, and official capacity claims.   Thus, the current request for dismissal and summary judgment fails on the current motion with regard to these claims.[9]

The Court now turns to Plaintiff's claims under § 1983 for First and Fourth Amendment violations.[10]   Essentially, both turn on the propriety of Defendant obtaining a search warrant for the phone.   Courts "recognize three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction."   *Goebert v. Lee Cty.*, 510 F.3d 1312, 1330 (11th Cir. 2007).   Plaintiff alleges that Defendant obtained a warrant without probable cause and in retaliation for her representation in the Bailey case.   Plaintiff also alleges the Defendant submitted false facts and/or omitted material facts from his affidavit to state court in violation of *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L.Ed.2d 667 (1978).   Finally, Plaintiff alleges the search warrant itself is without probable cause and is a general warrant.   As there is no criminal case wherein she can challenge the validity of the search or the warrant, the Court must perform some of the analysis here with the limited information provided by the parties with regard to obtaining the search warrant.

The Fourth Amendment guards "[t]he right of the people to be secure in their person,

---

[9]     Qualified immunity under federal law and state-function immunity under Alabama law are neither synonymous nor co-extensive.   They also use different standards (objective and subjective).   Most importantly, Defendant only raises qualified immunity and the *Younger* doctrine as defenses and the Court need not *sua sponte* address other defenses that may be raised unless jurisdictional.   To the extent permitted by law, Defendant may still have the opportunity to raise them in an answer and/or later filed motion for summary judgment.

[10]     Neither party discusses the Fifth Amendment claim raised in the Complaint and so the Court also declines to address it since not raised in the motion.

houses, papers, and effects, against unreasonable searches and seizures."   U.S. Const., amend. IV.

"Probable cause for a search exists when under the totality of the circumstances 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Goddard*, 312 F.3d 1360, 1363 (11th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)); *see also Zargari v. United States*, 658 Fed. Appx. 501, 506 (11th Cir. Sep 22, 2016) (quoting *United States v. Pantoja-Soto*, 739 F.2d 1520, 1523 (11th Cir. 1984)) (Probable cause exists "where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed.").   It is a common sense and practical determination synthesized from facts and inferences which may be reasonably and logically drawn from facts known.   *See United States v. Jiminez*, 224 F.3d 1243, 1248 (11th Cir. 2000) (citing *Gates*, 462 U.S. at 238, 103 S. Ct. at 2332).   "The nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observations." *United States v. Jenkins*, 901 F.2d 1075, 1080 (quoting *United States v. Lockett*, 674 F.2d 843, 846 (11th Cir. 1982)).   Based on this totality of the circumstances approach, "[c]ourts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to [judges] in their probable cause determinations."   *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (citations omitted).

Further, the standard for this § 1983 case is not whether probable cause existed, but instead whether there was <u>arguable</u> probable cause.   Qualified immunity applies when there was arguable

probable cause even if actual probable cause did not exist. *Jones v. Cannon*, 174 F.3d 1271, 1283 n. 3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry."). Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could have believed that probable cause was present. *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003) (quoting *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997). This inquiry is objective as the court must ask whether the officer's actions were objectively reasonable regardless of the officer's underlying motivation or intent. *Montoute*, 114 F.3d at 183-84. The standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs. *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)).

Despite Plaintiff's claims regarding Defendant's intent, that is not an issue for the Court to address. In short, even if his intent to obtain a search warrant was retaliatory for Plaintiff's actions in her representation of Bailey, the Court only looks to the current information to determine whether Defendant's actions were objectively reasonable as to arguable probable cause. Thus, the Court must look to the Application and Affidavit for Search Warrant, the Search Warrant, and the Defendant's affidavit in support of his qualified immunity request. *See* Doc. 21-1.

Defendant approached Judge Conaway from the 20th Judicial Circuit of Alabama to obtain a search warrant. The affidavit in support of the search warrant states very little information. Specifically, it only states the following:

> On October 05, 2016 Ruth Robinson called Danielle Whittington. Daniel said Ruth asked her to be in the Henry County Courthouse on October 07, 2016. Danielle asked Ruth why. Danielle said Ruth asked her to testify against Terry Nelson. Danielle said Ruth told her she needed to tell the court; Terry planted the drugs in the case against James Bailey, Gary Starling and Heather Lyn Brown. Danielle said Ruth said to say Terry was framing people for murder. Danielle said

after the conversation, Ruth text her at 2316 asking Danielle to call her. Danielle said she text back she did not have any minutes after midnight. Danielle said Ruth attempted to call her the following day. Danielle said she was the witness in the drug charges and Ruth did not know this, and Danielle did not want to tell her this. Danielle said she would not lie and testify falsely.

On October 06, 2016 Ruth Robinson came to Danielle's house located at, 971 North State Highway, Newton, Alabama at 2300 at night.

I am requesting a search warrant to seize and search Ruth Robinson's cell phone, specifically for location services and any digital data to confirm the phone calls and text. I am requesting the search warrant to seize and search all digital data linked to the crime of intimidating a witness.

*See* Doc. 21-1 at p. 13 (typographical errors in original). Alabama's standard for the existence of probable cause is the same as the federal standard. *See Stovall v. Allums*, Civ. Act. No. 1:04-cv-659, 2005 U.S. Dist. LEXIS 29146, *41, 2005 WL 2002069, *9 (M.D. Ala. Aug. 16, 2005). At present, the four corners of the affidavit in support of the application for search warrant fail to establish actual probable cause. Though not the standard applied here, the determination of actual probable cause would have negated further analysis into arguable probable cause. There is no reference to Robinson being an attorney, no supporting assertions that Danielle Whittington provided copies of her texts or phone logs (which would have also verified the texts and negated the need for reviewing a phone log or texts FROM Robinson to the witness except as a method of verifying the information already in the officer's possession. Further, taking the facts in the light most favorable to Robinson, there is nothing in the affidavit (or frankly any other evidence presented) that shows Robinson was insisting the witness commit perjury, but rather shows a potentially zealous advocate trying to convince a witness to testify at a hearing with regard to information the attorney believes the witness has personal knowledge. To determine if Defendant's actions were objectively reasonable, the Court looks to Alabama law on witness intimidation.

Intimidating a Witness

(a)   A person commits the crime of intimidating a witness if he attempts, by use of a threat directed to a witness or a person he believes will be called as a witness in any official proceedings, to:
> (1)   Corruptly influence the testimony of that person;
> (2)   Induce that person to avoid legal process summoning him to testify; or
> (3)   Induce that person to absent himself from an official proceeding to which he has been legally summoned.

(b)   "Threat," as used in this section, means any threat proscribed by Section 13A-6-25 on criminal coercion.

(c)   Intimidating a witness is a Class C felony.

Ala. Code. § 13A-10-123.   In looking to the basis for Defendant's request for a search warrant, the only applicable portion could be Subsection (a)(1).   The statute references to Alabama law on criminal coercion and uses the same definition of "threat" as contained in that section.   Ala. Code § 13A-6-25 states:

> A person commits the crime of criminal coercion if, without legal authority, he threatens to confine, restrain or to cause physical injury to the threatened person or another, or to damage the property or reputation of the threatened person or another with intent thereby to induce the threatened person or another against his will to do an unlawful act or refrain from doing a lawful act.

Thus, in order to meet the requirements of intimidating a witness, Defendant Ash must believe probable cause exists for the crime of Robinson corruptly influencing the testimony of Danielle Whittington.   Breaking that down into elements, Defendant would need the following:

(1)   Provide that Robinson either

   (a)   threatened to confine, restrain or cause physical injury to Danielle Whittington

   OR

   (b)   threatened to damage the property or reputation of Danielle Whittington

AND

(2)    Provide that Robinson did so in an attempt to corruptly influence the testimony of Danielle Whittington.

While there are some generalized assumptions that appear in Defendant's affidavit, there is no evidence of either version of "threats" as defined under the statute.   Further, the timeline provided by the defense indicates that the first contact was on October 5, 2016, but that Whittington did not contact the police to discuss the matter until *after* Defendant contacted her at the behest of Allen Hendrickson on October 6, 2016.   Moreover, the texts Defendant provides to corroborate the allegations show no more than an attorney attempting to reach a possible witness. The exchanges are not threatening nor are they so numerous that they could be construed as harassing or threatening.   The only remaining matter is that Robinson showed up at the house late in the evening the night before the hearing.   Robinson acknowledges that showing up "wasn't the most brilliant thing," however, in looking at the facts in the light most favorable to the Plaintiff, Robinson left when asked, did not enter or attempt to enter the premises, and never interacted with the witness.   Even Defendant's affidavit corroborates those details.   None of these matters can reasonably be considered to rise to the level of a threat as required under the Alabama Code given the minimal interactions over only 2 days.

Additionally, with regard to the search warrant and affidavit in support of the application, the Court can only consider the matters within the four corners of the document (at least given the evidence currently before the Court).   The Alabama Rules of Criminal Procedure do allow for "a judge or magistrate to issue a warrant based upon sworn testimony communicated by telephone or other appropriate means."   ALA. R. CRIM. P. 3.8(b)(2).   However, the rule also requires that the information be recorded or transcribed such that it can be incorporated into the probable cause determination.   ALA. R. CRIM. P. 3.8(b)(4).   Defendant has not provided any evidence that the oral statements he outlines in his later affidavit were reduced to writing, transcript, recording, or

any other means this Court can later review.   The later affidavit states Defendant "discussed with [the judge] Hendrickson and Whittington's statements" and "explained Robinson was an attorney."   Yet there is nothing that satisfies Rule 3.8(b)(4)'s requirements.   As such, the Court finds that probable cause does not exist within the four corners of the affidavit to support the search warrant in this instance.   Nor does there currently appear to be *arguable* probable cause as required under a qualified immunity analysis.[11]

While affidavits are an authorized means to support one's claims, they do, at times, have limitations.   In this case, Plaintiff never had the opportunity to conduct discovery as generally occurs in a civil case prior to summary judgment.   Therefore, she has been denied the meaningful ability to challenge the statements made by the opposing party in a potentially self-serving affidavit.   The Court cannot make credibility determinations when reviewing the evidence and must look at the facts in the light most favorable to the non-movant.   The evidence when considered as a whole (to include Defendant's affidavit) indicates Robinson through her representation of Bailey has challenged the credibility and integrity of the Dothan police department and other law enforcement involved in the Bailey case.   As such, taking the evidence in the light most favorable to Robinson (as the Court *must* do), an unchecked affidavit at the infancy of the lawsuit is problematic at best.   Plaintiff aptly points to some discrepancies between Defendant's affidavit and other evidence submitted by Defendant.   For example, Defendant states in his affidavit "On Defendant 2, 2016, I received a phone call from City Attorney Len White…I advised Mr. White that there was a very large amount of data contained on the phone which would require quite some time to search…I told him we would have to go with a download."   *See* Doc.

---

[11]       The Court acknowledges *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L.Ed.2d 677 (1984) and the good faith exception contained therein.   But, as noted throughout this opinion, there simply is not sufficient information to determine whether the judge at issue received all the material facts with regard to this case such that the good faith exception could apply.

21-1 at p. 6. However, Defendant also submits the affidavit of Tim Mullis which states "[o]n or about October 7, 2016….I began to download the cell phone contents utilizing equipment for which I would have been trained...Upon completion of the download, I returned the cell phone to Corporal Ash the same day…On or about October 11, 2016, I generated a PDF report and copied the report to a USB drive which I gave Corporal Ash." *See* Doc. 21-3 at p. 2. The Mullis timeline is corroborated by the Dothan Police Department evidence log and the chain of custody which shows the download occurred on October 7, 2016 and not around December 2, 2016 as stated in the Defendant's affidavit. Additionally, Defendant states Whittington told him that "she did not believe Robinson knew she was the confidential informant in Bailey and Brown's case." *See* Doc. 21-1 at p. 4. However, Plaintiff's complaint indicates Whittington called Robinson and "discussed the fact that she had worked as a confidential informant for police and had dated and driven around with Terry Nelson, a current Dothan City Police Officer, who was the arresting officer in Bailey's Houston County case." *See* Doc. 1 ¶ 17. While perhaps these discrepancies in Defendant's affidavit are benign, it is also possible that Plaintiff with discovery may be able to successfully challenge the affidavit.[12] Finally, Defendant does not support his affidavit with any evidence from Whittington or Hendrickson, but merely relays what he says he was told. This leads the Court to the next concern.

All the matters pertaining to what was said by Danielle Whittington and Allen Hendrickson constitute hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Generally, hearsay is not admissible. FED. R. EVID. 802. Inadmissible

---

[12]     It is equally true that Defendant will have the opportunity to seek discovery from Plaintiff and to challenge her assertions. Without discovery, this Court can only speculate and must construe the facts in favor of Plaintiff as the nonmovant.

hearsay generally "cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). The exception is that otherwise admissible evidence may be "submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form." *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) (emphasis omitted); *see also Macuba*, 193 F.3d at 1322-23 (Even though a document, deponent, or affiant references hearsay information, that information may be considered on summary judgment if it would be admissible at trial under an exception to the hearsay rule or as non-hearsay.). The Court is not convinced at this stage that Defendant has shown he can reduce these hearsay statements to an admissible form such that they can be considered by the Court on summary judgment. The Court specifically asked Defendant "[w]hether the witness Danielle Whittington formally completed paperwork to initiate a complaint regarding any charges of witness intimidation" and further held a hearing and status conference on August 1, 2017 to provide Defendant the opportunity to provide such information as indicated in the affidavit of Shane Ash. *See* Doc. 30. At the hearing, Defendant put Officer Steven Parish on the stand to discuss his understanding of the search warrant as well as the information he received about Danielle Whittington's complaints. However, that information is even farther removed as his knowledge is derived from what Ash told him about the conversation. Officer Parish also said their office does not require victims to complete complaints. However, none of that addresses the matter that those hearsay statements may or may not be admissible at trial. The Defendant could *presumably* call those witnesses at trial, but has not demonstrated that he could obtain sworn testimony from Danielle Whittington (whom he relies upon exclusively in the affidavit and application for the search warrant).

As an additional note, the Court previously referenced in footnote 4 that the name

highlighted on the text messages submitted by Defendant reference the name "Danielle Peterson." Throughout the entirety of the remaining evidence, Defendant refers to Danielle Whittington as the alleged victim of Robinson's witness intimidation. However, there is never an explanation as to the name difference between Whittington and Peterson. While it likely that they are one and the same person, the Defendant makes no effort to explain the discrepancy. Taking the evidence in the light most favorable to the Plaintiff, it is entirely possible there are two women named "Danielle" and the text messages are not related to the Danielle Whittington repeatedly relied upon by the defense. The Court acknowledges that this is likely an issue easily overcome, but again, notes this matter simply remains yet another deficiency in the Defendant's current request for summary judgment. It is not for the Court to resolve discrepancies in the evidence on behalf of the movant – rather the Court must look in favor of the non-movant.

The majority of this opinion has been dedicated to discussing the § 1983 Fourth Amendment claims. However, Plaintiff also asserts a claim for violation of the First Amendment. The same analysis applies to the First Amendment claim. Despite Defendant's assertions to the contrary, the Court finds this case on its face bears at least some similarities to *Bailey v. Wheeler*, 843 F.3d 473 (11th Cir. 2016). Defendant argues *Bailey* is inapplicable because the case was released after the conduct at issue so the Defendant could not have been on notice that his conduct was unconstitutional. However, Plaintiff correctly notes that *Bailey* relies heavily on other cases wherein First Amendment retaliation claims were discussed in great detail. Put simply, if Defendant did improperly obtain a search warrant to seize her phone as retaliation for her actions as an attorney, the chilling effect could ripple throughout the legal defense community.

Finally, Defendant argues that Plaintiff should have filed her request for relief in state court instead of in this Court. While perhaps in the early stages that may have been an appropriate

course of action, it is also equally true that Plaintiff could file her lawsuit in this Court. One solution may be more appropriate than the other, but it does not change the fact either option is available to Plaintiff. She ultimately chose to file this lawsuit here – which is her right. Moreover, "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S. Ct. 1827, 1830, 118 L. Ed. 2d 504 (1992) (quoting *Carey v. Piphus*, 435 U.S. 247, 254-57, 98 S. Ct. 1042, 55 L.Ed.2d 252 (1978)). As such, this Court is an appropriate jurisdiction and venue for Plaintiff's claims.

## VI. CONCLUSION

Ultimately, Defendant originally submitted a motion under Fed. R. Civ. P. 12(b)(6). Had it been reviewed under that standard, the motion would have certainly been denied as Plaintiff's complaint certainly manages to clear the low bar that is required for a Complaint. However, the Court converted the motion to dismiss to a motion for summary judgment so that it was not faced with conflicting standards of review. Yet, there also was no period for discovery which put Plaintiff in the position of defending against self-serving affidavits with her own equally self-serving affidavits. Moreover, it also is clear that no matter what, this case will go forward on the state law claims, the official capacity claims, and the injunctive relief. Therefore, this ruling would not functionally change the posture of the case. Plaintiff would be entitled to discovery as to the remaining claims which factually are intertwined with her § 1983 constitutional claims.

"Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Ala. A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). The Court has done so here. When considering the motion, the minimal evidence presented, and the lack of discovery conducted, the

Court finds that the plaintiff's allegations, if true, establish a constitutional violation and that the constitutional right was clearly established.

The Court has not determined that Defendant will never receive the application of qualified immunity for the federal claims involving monetary damages. While the Court certainly intends to determine the applicability of qualified immunity at the earliest stage possible, it also intends to ensure the facts and evidence are fleshed out to the point of a reasoned analysis. There is simply not enough information to reach a well-supported conclusion at the nascent stage of these proceedings. As previously noted, summary judgment is proper after *adequate time for discovery* and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552 (emphasis added). At this stage, absent discovery which will address the concerns noted above, the Court has insufficient information to determine the applicability of qualified immunity to the claims for damages and the summary judgment should be denied without prejudice to reassert after discovery has occurred.

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that the Motion for Summary Judgment (Doc. 9) be **DENIED without prejudice** to reassert after discovery occurs.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation on or before **September 14, 2017**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the

Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 31st day of August, 2017.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE