IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RUTH L. ROBINSON,                )
                                 )
            Plaintiff,           )
                                 )
      v.                         )        CASE NO. 1:16-CV-879-WKW
                                 )               [WO]
DOTHAN POLICE OFFICER            )
SHANE ASH, in both his individual )
and official capacities,         )
                                 )
            Defendant.           )

**MEMORANDUM OPINION AND ORDER**

This case asks whether a city police officer who, apparently without seeking permission or notifying proper authorities, decided to investigate an alleged crime the officer admits occurred outside his city's jurisdiction, then used his findings to get a search warrant allowing him to peruse the contents of an attorney's cell phone, is entitled to qualified and state-agent immunity. The answer, under federal and Alabama law, is no.

Before the court is Defendant's motion for summary judgment. (Doc. # 48.) Defendant contends that qualified and state-agent immunity entitle him to summary judgment on the individual-capacity claims under 42 U.S.C. § 1983 and Alabama law, respectively. Defendant also argues that the official-capacity claims fail under both § 1983 and Alabama law. Defendant is correct on the latter, but not on the

former.   Defendant is immune from the official-capacity claims, but not the individual-capacity claims.   The court will therefore grant Defendant summary judgment only on the official-capacity claims.

Summary judgment is inappropriate on the individual-capacity claims. Defendant contends that, even if he is not entitled to qualified or state-agent immunity, summary judgment is due because a lawful search warrant cleanses any constitutional infirmities in his actions.  Not so.  For the reasons below, there is a genuine dispute of material fact as to whether Defendant violated Plaintiff's constitutional and state-law rights.   The court will therefore deny Defendant's motion for summary judgment on the individual-capacity claims.

## I.  JURISDICTION AND VENUE

Subject-matter jurisdiction over the federal-law claims is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 1983.  Jurisdiction over the state-law claims is proper under 28 U.S.C. § 1367.  The parties do not contest personal jurisdiction or venue.

## II.  STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820

(11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish — with evidence beyond the pleadings — that a genuine dispute material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## III.  BACKGROUND

Defendant Shane Ash is an investigator for the Dothan Police Department. Plaintiff Ruth Robinson, an attorney, represents James Bailey, a man convicted of murder, in post-conviction proceedings in state court in Henry County.  Dothan is in adjoining Houston County, and both counties comprise the Twentieth Judicial Circuit of Alabama.

Plaintiff was scheduled to attend a hearing in the Bailey case at the Henry County Courthouse on October 7, 2016.  In preparation, Plaintiff did some digging. Two days before the hearing, on October 5, 2016, Plaintiff learned that Danielle Whittington might have some information relating to Bailey's case.  As it turns out, Whittington was a confidential informant against Bailey in one of his criminal cases, (Doc. # 49-1, at 2), although Plaintiff claims she did not know this when she first reached out to Whittington, (Doc. # 51-6, at 3).  In any event, hoping to find out more, Plaintiff called Whittington's mother to try to get in touch with Whittington.

Whittington called Plaintiff shortly thereafter.  Plaintiff says Whittington told her she needed more time to get her thoughts together and would call Plaintiff back the next day.  (Doc. # 51-6, at 2.)  Whittington says she told Plaintiff not to call again.  (Doc. # 49-1, at 2.)  Plaintiff sent Whittington several more messages that evening.  According to Plaintiff, Whittington responded by text that she was out of

minutes on her cell phone and would be unable to call until the October 7, the day of the hearing.  (Doc. # 51-6, at 2.)

So Plaintiff decided to visit Whittington in person.  The next day, October 6, Plaintiff went to Whittington's house near Newton, Alabama — a town with corporate limits entirely within Dale County — a little after 10:00 p.m.  According to an affidavit by the sheriff of Houston County, the actual "Newton" address of Whittington is in Houston County, not Dale County.  (Doc. # 49-9, at 1.)  In any event, the address was outside Defendant's Dothan police jurisdiction but apparently inside the same county — Houston.  Plaintiff knocked on the door, but Whittington's boyfriend answered and told Plaintiff that Whittington was not home.  (Doc. # 49-1, at 3.)  Plaintiff departed Whittington's house.

The Bailey hearing was scheduled in the Henry County Courthouse for the next day, October 7.  That morning, Plaintiff left Whittington a voicemail shortly before the hearing asking Whittington to give her a call.  (Doc. # 51-6, at 3.)  At the hearing, Twentieth Circuit District Attorney Douglas Valeska accused Plaintiff of stalking and harassing Allen Hendrickson (not Whittington), one of the officers involved in one of Bailey's cases and "the very officer whom [Plaintiff] has sought to hold accountable in [those] cases."  (Doc. # 1, at 7.)  Plaintiff denied the accusations, and the circuit court judge declined to address the matter.  (Doc. # 51-6, at 3.)

As she was leaving the hearing, Plaintiff was detained, and her cell phone was seized by Henry County Sheriff's deputies, who presented her a copy of a search warrant, for the phone, issued by a judge of the Twentieth Judicial Circuit. (Doc. # 51-6, at 3.) The only crime mentioned in the warrant is "the crime of intimidating a witness." (Doc. # 49-4, at 2.)

As it turns out, Defendant was the one who obtained the search warrant from a judge in Dothan, Houston County. Defendant had received a call the day before from Allen Hendrickson — the individual alleged by Valeska to be the victim of Plaintiff's harassment. (Doc. # 49-2, at 2.) But the call from Hendrickson was not about Plaintiff harassing Hendrickson. Instead, it was about *Whittington*, who had called Hendrickson to complain about Plaintiff contacting her. Whittington told Hendrickson (who repeated it to Defendant) that Plaintiff had tried to get her to commit perjury by telling the court that a Dothan police officer named Terry Nelson had framed Bailey in his drug case and was framing people for murder. (Doc. # 49-1, at 2.)

Armed with the tip from Hendrickson, Defendant — who, remember, is a Dothan police investigator — decided to investigate. Defendant called Whittington, who told Defendant the same story she had told Hendrickson about Plaintiff calling her to try to get her to commit perjury. (Doc. # 49-2, at 2–3.) The next day, Whittington called Defendant to tell him that Plaintiff had showed up to her house

uninvited late at night asking for her.  Defendant asked if Whittington wanted to press charges against Plaintiff, and she said yes.  (Doc. # 49-1, at 3; Doc. # 49-2, at 3.)

Defendant recounted Whittington's tale in an affidavit he used to obtain the warrant from a judge of Alabama's Twentieth Judicial District to search Plaintiff's cell phone for evidence of the "crime of intimidating a witness."[1]  (Doc. # 49-4, at 2.)  The warrant was to be executed in Henry County, where Plaintiff would be at the courthouse.  (Doc. # 49-4, at 1.)  So it was that Henry County Sheriff's deputies, later joined by Defendant, seized Plaintiff's phone as she was leaving the Henry County Courthouse on October 7, 2016.   After Defendant took possession of Plaintiff's phone, it remained in the Dothan police department's possession.  A few weeks following the seizure, Plaintiff asked Defendant when she would get her phone back, and he did not give her a definitive answer.  (Doc. # 51-6, at 4.)  This lawsuit followed.[2]

Plaintiff alleges that Defendant orchestrated an illegal search and seizure of her phone to retaliate against her for representing Bailey and speaking out against

---

[1] Plaintiff admits contacting and attempting to contact Whittington leading up to the October 7 hearing, but denies intimidating her or asking her to commit perjury.

[2] Defendant states as an undisputed fact that Plaintiff's cell phone was returned to her on December 7, 2016, pursuant to an order from the Magistrate Judge.  (Doc. # 49-2, at 6.)  The Magistrate Judge appears to have ordered the return of Plaintiff's cell phone at a status conference on December 2, 2016.

police misconduct, as well as to discover attorney–client privileged communications. Defendant contends his actions did not violate Plaintiff's constitutional rights because they were justified by a search warrant supported by probable cause, and, in any event, he is entitled to qualified and state-agent immunity on the individual-capacity claims. He moves for summary judgment on those grounds.

## IV. DISCUSSION

### A. The Individual-Capacity Claims

Defendant's motion relies almost entirely on qualified and state-agent immunity to defend against the individual-capacity claims. The Supreme Court has articulated a two-step procedure for deciding a claim of qualified immunity. First, the court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the plaintiff passes the first step, the court then asks whether the right was "clearly established" at the time of the alleged misconduct. *Id.* The Supreme Court later held that lower courts have discretion to decide which of *Saucier*'s two prongs they address first when a defendant raises qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Because Defendant does not carry his initial burden of showing he was acting within his

discretionary authority, the court will discuss that aspect of the qualified-immunity analysis before turning to the constitutional violations Plaintiff alleges.

### 1. Because Defendant appears to have acted outside his jurisdiction, he is not entitled to qualified or state-agent immunity.

#### a. Qualified Immunity

Several of Defendant's qualified immunity arguments have already been considered and rejected in the court's previous memorandum opinion and order (Doc. # 37) denying Defendant's motion to dismiss (Doc. # 9) on qualified immunity grounds. But even with the facts available at the summary-judgment stage, Defendant has not shown that he is entitled to qualified immunity.

Before the court reaches the "clearly established" prong of qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. If the defendant was not acting within his discretionary authority, he is ineligible for the benefit of qualified immunity." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (cleaned up). "A government official acts within her discretionary authority if the actions were (1) undertaken pursuant to the performance of [her] duties and (2) within the scope of [her] authority." *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995) (alterations in original).

In the Fourth Amendment context, the court does not ask "whether [an officer] has the right to engage in *unconstitutional* search and seizures, but whether engaging

in searches and seizures *in general* is part of his job-related powers and responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). "Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." *Id.* In determining the scope of an officer's discretionary authority, the court looks to state law. *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). Because Defendant has not shown he was acting within the scope of his authority under Alabama law when he, on his own, investigated a crime that occurred outside his jurisdiction, he is not entitled to qualified immunity.

Municipal police officers do not have free-floating jurisdiction in Alabama. They are limited to exercising their authority in the cities which they serve and three miles outside the city's corporate limits. *See* Ala. Code § 11-40-10(a)(1). There are a few exceptions. First, the arrest exception: Alabama law allows a municipal officer to arrest a person anywhere in the county in which the city lies. *See* Ala. Code § 15-10-1. Second, the search warrant exception: A municipal officer may, if he is accompanied by the county sheriff's deputies, execute a search warrant outside his jurisdiction. *See* Ala. Code §§ 15-5-1, 15-5-5, 15-5-7; *Gamble v. State*, 473 So. 2d 1188, 1196 (Ala. Crim. App. 1985) (holding that warrant "executed by a municipal officer in cooperation with county sheriff's deputies was valid even if the

deputies were present merely to legitimate the search" (citing *United States v. Martin*, 600 F.2d 1175, 1183 (5th Cir. 1979), *overruled on other grounds by United States v. McKeever*, 905 F.2d 829 (5th Cir. 1990))).  And an officer may, as may any civilian, arrest someone who commits a crime in his presence.  *See* Ala. Code § 15-10-7(a)(1).  Defendant is thus limited to operating within three miles of the Dothan corporate limits, unless he is making an *arrest* in Houston County (in which Dothan sits), he is *executing a search warrant* in tandem with another county's sheriff's deputies, or the crime was committed in his presence.  None of these exceptions covers Defendant's actions.

Defendant uses the arrest and search warrant exceptions to argue that a municipal officer may investigate a crime that occurred outside the city's corporate limits, but within his *county*.  That is not so for two reasons.  First, the arrest exception does not help Defendant because there was no arrest here.  Moreover, that exception does not speak to the situation when the alleged crime was committed *outside* the municipal officer's jurisdiction.  There is no evidence any part of the alleged crime was committed in Defendant's municipal jurisdiction.  Second, Defendant's reliance on the search warrant exception is misplaced because it does not speak to the situation when the municipal officer, on his own, transcends his jurisdictional limitations to *investigate* alleged crimes, then uses his findings to

convince a judge he needs a search warrant. That the warrant was lawfully executed does not mean his actions in obtaining the warrant were lawful.

Defendant cites no authority suggesting that a solo, unauthorized municipal officer who investigates alleged crimes that occurred outside his jurisdiction, then uses that information to obtain a search warrant, is entitled to qualified immunity. The cases Defendant does cite are inapposite. In *Thorn v. Randall*, which involved the execution of a search warrant, it was undisputed that the officers were *authorized* to execute the search warrant and were accompanied by a prosecutor who *did* have jurisdiction over the area. No. 8:14-cv-862-T-36MAP, 2015 WL 3752448, at *4 (M.D. Fla. June 16, 2015). And in *Maughon v. City of Covington*, the officers acting outside their jurisdiction were accompanied by officers who *did* have jurisdiction. 505 F. App'x 818, 822 (11th Cir. 2013) ("As the record shows, during the arrest, Officer Fuller was acting with the permission of his supervisor in Newton County, in collaboration with Walton County, in the presence of a Walton County officer, and very close to the Newton–Walton county line."). There is no evidence that Defendant sought permission from a supervisor or collaborated with proper authorities in Houston County before investigating and obtaining the warrant.

This case is more like *Jones v. City of Atlanta*, where the Eleventh Circuit held that two unauthorized and unaccompanied officers who "were outside of their police jurisdiction when they allegedly violated Jones's constitutional rights" were not

exercising discretionary authority.   192 F. App'x 894, 898 (11th Cir. 2006). Moreover, the alleged acts apparently occurred not only well outside Dothan corporate limits, but in connection with a proceeding *in an entirely different county* — Henry County.  And Defendant does not even attempt to say he has jurisdiction in Henry County.

In any event, no matter what federal courts elsewhere have said about the scope of an officer's discretionary authority, Alabama courts have held that a municipal officer is *not* exercising discretionary authority when he exceeds his jurisdictional boundaries.  *See Newton v. Town of Columbia*, 695 So. 2d 1213, 1217 (Ala. Civ. App. 1997) (stating that if the incident occurred "outside the police jurisdiction of the town . . . [the officer] may not assert any privilege that might otherwise inure to him in his role as a police officer"); *Moore v. Crocker*, 852 So. 2d 89, 91–92 (Ala. 2002) ("Crocker's arresting Moore outside the county containing the city employing Crocker exceeded his authority and therefore forecloses his claim of peace officer immunity under § 6-5-338."); *Ex parte Wallace*, 497 So. 2d 96, 97 (Ala. 1986) ("A police officer may arrest in his official capacity without a warrant only within the limits of the political subdivision of the state of which he is a police officer.").  Defendant attempts to distinguish *Newton* and *Moore* on the ground that, unlike here, the incidents occurred in a different county than the city for which the officer worked.  But Alabama law does not give a municipal officer authority

elsewhere in the county except in the three narrow circumstances already discussed. Since the court must look to Alabama law to decide the threshold question of discretionary authority, it is bound to conclude that Defendant had no authority to act on his own, outside his jurisdiction, in obtaining a search warrant.

Defendant might have argued that some of Plaintiff's alleged criminal acts occurred in an area where he unquestionably had authority — *i.e.*, within three miles of the Dothan corporate limits.  Had Defendant received word that Plaintiff contacted Whittington while in Dothan to ask her to commit perjury, Defendant would have a much stronger case that he was justified in investigating such an allegation.  But Defendant appears to concede that none of Plaintiff's alleged criminal acts occurred within Dothan police jurisdiction, instead basing his entire argument on the premise that his jurisdiction covers the whole county.  At the very least, there is a genuine dispute of material fact on this point, and Defendant is not entitled to summary judgment on the Fourth Amendment claim for that reason alone.

Defendant could have taken a different path.  He could have called the Newton Police or the Houston County Sheriff to relay Whittington's allegations.[3]  Such cooperation is necessary for effective enforcement of the law.  But that is not what Defendant did.  Defendant chose to take matters into his own hands by tracking

---

[3] Or he could have even notified the Henry County Sheriff, since the Bailey proceeding was occurring in Henry County.

down the alleged victim, asking if she would like to press charges, then obtaining a search warrant based on the things she told him — facts that appear to have arisen in an area where he had no authority.

Because investigating crimes outside his jurisdiction is not part of Defendant's job description under Alabama law, Defendant is not entitled to qualified immunity on the individual-capacity claims.

### b. State-Agent Immunity

For the same reasons Defendant is not entitled to qualified immunity, Defendant is not entitled to state-agent immunity with respect to Plaintiff's state-law claims against him in his individual capacity.  Under Alabama law, municipal police officers such as Defendant are afforded "immunity from tort liability arising out of his or her conduct in performance of any *discretionary function* within the line and scope of his or her law enforcement duties."  Ala. Code § 6-5-338(a) (emphasis added).  As explained, because Defendant operated outside his jurisdiction in obtaining the search warrant, he was not engaged in a discretionary function.  *See Newton*, 695 So. 2d at 1217; *Moore*, 852 So. 2d at 91–92.  Defendant is therefore not entitled to state-agent immunity on the individual-capacity claims.

### 2. There is a genuine dispute as to whether Defendant violated Plaintiff's First, Fourth, and Fifth Amendment rights.

Plaintiff claims Defendant's search and seizure of her cell phone without probable cause violated her First, Fourth, and Fifth Amendment rights.  For the

reasons below, Plaintiff has presented enough evidence to generate a genuine dispute of material fact as to whether Defendant violated Plaintiff's constitutional rights.

> **a. There is a genuine dispute as to whether Defendant had a retaliatory motive on the First Amendment claim.**

To state a First Amendment retaliation claim, a plaintiff "must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1255.

Plaintiff's representation of Bailey in court was a protected First Amendment activity. And there is no reason to think that a police search of an attorney's phone for information related to that representation would not chill such activity. It is a closer question, however, whether Plaintiff has proffered sufficient evidence to prevail on prong three: the causal connection between the retaliatory actions and the adverse effect on speech. "In order to establish a causal connection, the plaintiff must show that the defendant was *subjectively motivated* to take the adverse action because of the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011) (emphasis added).

Plaintiff has raised a genuine dispute of material fact as to whether Defendant's search and seizure of her cell phone was motivated by retaliation for her advocacy. Although the record lacks direct evidence, circumstantial evidence is appropriate in showing retaliatory motive. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999).

Viewed in the light most favorable to Plaintiff, there are three pieces of circumstantial evidence that could lead a reasonable jury to conclude Defendant had a retaliatory motive. First, Hendrickson, the officer whose conduct Plaintiff was challenging, is the one who passed along the tip to Defendant, thus prompting Defendant's investigation. (*See* Doc. # 49-2, at 2.) A reasonable jury could believe that Hendrickson had a motive to retaliate against Plaintiff, and could also infer from Hendrickson's tip that he and Defendant were coordinating the actions against Plaintiff. Second, a reasonable jury could infer from the fact that Plaintiff was never prosecuted for a crime and Defendant kept her phone for about two months, giving no indication of when it would be returned, indicates an intent to harass, rather than to pursue legitimate criminal charges. The fact that it was the phone of an attorney actively involved in criminal proceedings in that circuit is relevant.

Third and perhaps most importantly, Defendant investigated an alleged crime that apparently occurred in an area where he had no authority. Whittington's home is unquestionably outside Dothan's police jurisdiction, and Defendant could not

have reasonably believed he had authority to investigate an alleged crime that occurred there.  A reasonable jury could think that Defendant's haste — apparently without seeking permission from a supervisor or notifying proper authorities — to investigate an alleged crime that occurred outside his jurisdiction, shows a motive to retaliate against Plaintiff.  Relatedly, Defendant would not have had authority to execute the search warrant on his own in another county.  Defendant needed the presence of a Henry County sheriff's deputy to execute the warrant in Henry County. *See* Ala. Code §§ 15-5-1, 15-5-5, 15-5-7.  A reasonable jury could think Defendant's extra efforts were motivated by something other than desire to just do his job.  In sum, there is enough circumstantial evidence of retaliatory intent on the part of Defendant to help Plaintiff carry her "burden of producing . . . evidence that would support a jury verdict."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Defendant argues that because the warrant was supported by probable cause, Plaintiff's retaliation claim is deficient as a matter of law.  This argument does not entitle Defendant to summary judgment for two reasons.  First, in light of the Supreme Court's recent decision in *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945 (2018), it is not necessarily true that probable cause defeats any First Amendment retaliation claim.  In *Lozman*, the court considered whether a plaintiff bringing a retaliatory arrest claim must prove the absence of probable cause.  *Id.* at 1949.  The plaintiff alleged that the city had an official policy motivated by

retaliation against him.  *Id.* at 1954.  The court decided, under circumstances "when retaliation against protected speech is elevated to the level of official policy," the plaintiff need not prove the absence of probable cause in making a retaliation claim. *Id.* at 1954–55.  The court did not answer whether a plaintiff must prove the absence of probable cause when the alleged retaliatory arrest stems from the discretion of an individual officer rather than an official policy.  It instead granted certiorari on that question in *Nieves v. Bartlett*, a case that was argued on November 26, 2018, but has not yet been decided.  *See* 138 S. Ct. 2709 (Mem.) (2018) (granting certiorari).

This case is not squarely captured by *Lozman*, because Plaintiff has not alleged an official policy of retaliation against her.  Nor has she named the City of Dothan or the Dothan Police Department as defendants.  Thus, whether Plaintiff must prove the absence of probable cause is an open question, and one that will be decided by the Supreme Court in the coming months.  The court will therefore continue the trial of this case to the next Dothan trial term, when the Supreme Court, barring unusual circumstances, will have answered the probable cause question in *Nieves*.

Once Plaintiff has shown there was a retaliatory motive, the burden shifts to Defendant to show that he "would have taken the same action in the absence of the protected conduct, in which case the defendant cannot be held liable."  *Castle*, 631 F.3d at 1194 (citing *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008)).

Defendant has made no such showing; his motion for summary judgment does not reference this burden-shifting framework required to analyze retaliation claims. Defendant is therefore not entitled to summary judgment on Plaintiff's First Amendment claim.

### b.  There is a genuine dispute as to probable cause on the Fourth Amendment claim.

Section 1983 is unique in that some questions one would normally think of as questions for the court are instead decided by a jury.  Such is the case with probable cause to support a search warrant.  "[W]hen there are multiple reasonable determinations of the facts, the existence of probable cause in a § 1983 action presents a jury question."  *Llorente v. Demings*, 743 F. App'x 327, 329 (11th Cir. 2018) (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1234–35 (11th Cir. 2004)); *see Kingsland*, 382 F.3d at 1233 ("Because a jury question exists as to whether the defendants constructed evidence upon which to base Kingsland's arrest, the question whether arguable probable cause for the arrest existed is aptly suited for a jury."); *Gregory v. City of Louisville*, 444 F.3d 725, 743 (6th Cir. 2006).  Moreover, the Supreme Court has held that, in the context of the criminal analogue to § 1983, "[t]he question of probable cause to conduct a search . . . is resolved by the judge when it arises in the context of a motion to suppress evidence obtained in the search; but by the jury when it is one of the elements of the crime of depriving a person of constitutional rights under color of law."  *United States v. Gaudin*, 515 U.S. 506,

521 (1995).  There is no principled reason, in view of the Seventh Amendment, for a different rule in a § 1983 action, and Defendant has not argued otherwise.

Defendant is not entitled to rely on the magistrate's determination that there was probable cause to support the search warrant.  The Supreme Court has explained that even if a magistrate approves the warrant, the officer may be liable under § 1983 if "a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause."  *Malley v. Briggs*, 475 U.S. 335, 345 (1986).

But Defendant does not get even that much leeway because, as explained above, he does not carry his initial burden of showing he was acting within his discretionary authority for qualified-immunity purposes.  Defendant therefore does not receive the benefit of the arguable-probable-cause standard used to assess whether the right was "clearly established," the second step in the qualified immunity analysis.  *See Poulaskis v. Rogers*, 341 F. App'x 523, 526 (11th Cir. 2009) (explaining that the "arguable probable cause" inquiry is part of the "clearly established" prong of qualified immunity).  Because he exceeded his jurisdiction and thus was not acting within his discretionary authority,[4] Defendant may not assert

---

[4] The fact that Defendant went outside his jurisdiction to obtain the warrant does not *itself* vitiate the warrant's validity *as long as* the warrant was supported by probable cause and was not overbroad.  *United States v. Green*, 178 F.3d 1099, 1106 (10th Cir. 1999) ("The Fourth Amendment is satisfied where, as here, officers obtain a warrant, *grounded in probable cause and phrased with sufficient particularity*, from a magistrate of the relevant jurisdiction authorizing them to search a particular location, even if those officers are acting outside their jurisdiction as defined by state law." (footnote omitted) (emphasis added)); *Guest v. Leis*, 255 F.3d 325, 334 (6th Cir. 2001) ("Even though the police violated state law, the violation did not make the search

*arguable* probable cause; he must show there is no genuine dispute as to whether there is good, old-fashioned probable cause *in fact*, a higher burden for him to meet on summary judgment.

Taking the evidence in the light most favorable to Plaintiff, there is a genuine dispute of material fact as to whether there was probable cause to support the search warrant Defendant used to search and seize Plaintiff's phone.  "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence in a particular location."  *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999).   "Whether a particular set of facts gives rise to probable cause . . . depends, of course, on the elements of the crime."  *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1333 (11th Cir. 2004).

There is, *at minimum*, a genuine dispute of material fact as to whether Defendant had probable cause to believe Plaintiff had committed the crime of intimidating a witness.  Alabama Code § 13A-10-25 defines "intimidating a witness" as, "by use of a threat," attempting to "[c]orruptly influence the testimony of that person."  "Threat," as used by the provision, is defined in Alabama Code § 13A-6-

---

unreasonable in a constitutional sense because the search warrant was supported by probable cause." (citations omitted)); *accord Walker v. City of Wilmington*, 360 F. App'x 305, 313 (3d Cir. 2010) (citing *Green* with approval in the context of a § 1983 action).

25 as a threat "to confine, restrain or to cause physical injury to the threatened person of another."

Nowhere in Defendant's search warrant affidavit do any facts appear that could constitute a "threat" under Alabama law.  Defendant simply related the conversations between Plaintiff and Whittington and spoke of no threat or coercive action made by Plaintiff.  He did not say that Whittington told him she felt scared or intimidated at any time; he simply said Plaintiff contacted Whittington several times about testifying in the Bailey case and came to her home.  There is no indication Plaintiff did not leave the home when asked.  Even Whittington's affidavit, which was later prepared for purposes of this lawsuit, does not allege that Plaintiff threatened her, only that she "was intimidated."  (Doc. # 49-1, at 3.)  In short, the affidavit does not establish the requisite connection between Plaintiff, her cell phone, and criminal activity.  *See United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002).  There is a genuine dispute of material fact as to the existence of probable cause to support the search warrant.[5]

---

[5] Plaintiff also argues the warrant was an invalid general search warrant.  As the court noted in its opinion denying Defendant's motion to dismiss, the warrant "authorized a broad—arguably comprehensive—search of the contents of Plaintiff's cell phone" and is "seemingly unrestricted." (Doc. # 37, at 7, 13.)  Cell phones present special privacy concerns given the sheer amount and kind of data they contain.  *See Riley v. California*, 573 U.S. 373, 393–98 (2014).  At this stage, the court agrees with Plaintiff that the warrant was overbroad.  While Defendant's affidavit seeks to search "*location services* and any digital data *to confirm the phone calls and text*," (Doc. # 49-3, at 1 (emphasis added)), the warrant itself allows a search of "any and all communications, emails, pictures, phone directory lists, and call logs," (Doc. # 49-4, at 1).  The Fourth Amendment requires a search warrant to "particularly describ[e] the place to be search, and the persons or things to be

### c. Defendant has not shown he is entitled to summary judgment on the Fifth Amendment claim.

Plaintiff claims that Defendant's confiscation of her cell phone was an unconstitutional taking under the Fifth Amendment. Defendant responds that the Fifth Amendment does not apply to the states, but Defendant is wrong. The Takings Clause of the Fifth Amendment applies to the states through the Fourteenth Amendment. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005) (citing

---

seized." U.S. Const. amend. IV. "[A] description is sufficiently particular when it enables the searcher reasonably to ascertain and identify the things to be seized." *United States v. Santarelli*, 778 F.2d 609, 614 (11th Cir. 1985). Whether the warrant's description is specific enough depends on "the circumstances and the nature of the activity under investigation." *Id.* The breadth of the search warrant appears to have exceeded its initial mandate. Defendant's affidavit mentions the need to search location services, text messages, and call logs to confirm that Plaintiff went to Whittington's house and tried to contact her. Instead, the warrant allowed the Dothan Police Department to look at Plaintiff's pictures, emails, and "any and all digital evidence" linked to the alleged crime. (Doc. # 49-4, at 1.) Defendant downloaded 16.2 gigabytes of data from the phone (Doc. # 49-6, at 1) and appears to have searched all of it, since he found pictures of Plaintiff and Bailey on the phone (pictures that the Dothan Police Department later gave to the FBI (Doc. # 49-12, at 3)). Defendant cites *United States v. Khanani*, 502 F.3d 1281, 1290 (11th Cir. 2007), for the proposition that officers do not need a written "search protocol" when searching digital evidence. But unlike here, the investigators in *Khanani* "winnowed down the files seized from approximately three million to approximately 270,000" using keyword searches. *Id.* There is no evidence that Defendant or anyone in the Dothan Police Department investigating Plaintiff's alleged crimes narrowed their search *at all.* The particularity requirement "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States v. Chadwick*, 433 U.S. 1, 9 (1977). Plaintiff had no such assurance when she was presented with a warrant allowing such a comprehensive, free-roaming search of her cell phone.

The overbreadth of a warrant appears to be an issue of law for the court, not the jury, in § 1983 cases. *See Groh v. Ramirez*, 540 U.S. 551, 560–66 (2004) (deciding as a matter of law that warrant was overbroad in a § 1983 action). But the parties did not extensively brief this issue at the summary-judgment stage. Moreover, the court is reluctant to decide this issue in Plaintiff's favor because *she* did not move for a summary judgment that the warrant was overbroad. Thus, at this point in time, the court is reluctant to decide as a matter of law that the warrant violated the Fourth Amendment's particularity requirement. Plaintiff may move for judgment as a matter of law at trial. *See* Fed. R. Civ. P. 50.

*Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897)).  Moreover, Plaintiff's

Fifth Amendment claim is not subsumed into Plaintiff's Fourth Amendment claim,

or vice-versa.  These two claims may coexist in the same action.  *Severance v.*

*Patterson*, 566 F.3d 490, 501 (5th Cir. 2009); *Presley v. City of Charlottesville*, 464

F.3d 480, 487 (4th Cir. 2006); *see United States v. James Daniel Good Real*

*Property*, 510 U.S. 43, 49–50 (1993) (holding that the Fourth and Fifth Amendments

provide two explicit sources of constitutional protection and the question "is not

which Amendment controls but whether either Amendment is violated").  Defendant

gives no reason, other than an incorrect statement of law, that summary judgment

should be granted on the takings claim.  Defendant is thus not entitled to summary

judgment on Plaintiff's Fifth Amendment claim.

>        **d.  Defendant has not shown he is entitled to summary judgment on the state-law claims.**

Defendant gives no reason, other than the state-agent immunity argument the

court rejected above, why summary judgment is due on Plaintiff's state-law claims.

Because Defendant has failed to carry his burden to show he is entitled to judgment

as a matter of law on the state-law claims, his motion will be denied as to those

claims.

Because there is a genuine dispute of material fact as to whether Defendant

violated Plaintiff's constitutional and state-law rights, and because he is not entitled

to qualified or state-agent immunity, Defendant is not entitled to summary judgment as to any of the claims against him in his individual capacity.

## B.  The Official-Capacity Claims

### 1.  There is no evidence of any policy or custom that would make Defendant liable under § 1983 for the claims against him in his official capacity.

Defendant fares better on his argument that he is entitled to summary judgment on the official-capacity claims.  Claims against an individual officer in his official capacity are really claims against the entity he represents.  *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999).  But an entity can only be liable under § 1983 when "it is the execution of a government's policy or custom" that inflicts Plaintiff's injury.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Here, Plaintiff has *alleged* that Defendant was executing a policy, pattern, or practice of violating individuals' constitutional rights (*see* Doc. # 1, at 7, 8, 10), but does not identify any other instances of Defendant's conduct that could lead a reasonable factfinder to infer that the City of Dothan or the Dothan Police Department had such a practice.  Such a "conclusory assertion of a custom or policy" resulting in a constitutional violation is not enough to establish § 1983 liability against Defendant in his official capacity.  *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1267 (11th Cir. 2010).

Defendant's motion for summary judgment will therefore be granted as to the § 1983 claims against him in his official capacity.

**2. Defendant is absolutely immune from the state-law claims against him in his official capacity.**

Like under § 1983, a claim against a state official in his official capacity is really a claim against the state itself. *Ex parte Butts*, 775 So. 2d 173, 177 (Ala. 2000). Municipal police officers are officers of the state. *See* Ala. Code § 6-5-338(a). Claims for money damages against the state, state agencies, and state officials being sued in their official capacities are absolutely barred. *Ex parte Lawley*, 38 So. 3d 41, 45 (Ala. 2009); *see* Ala. Const. art. I § 14. Thus, Defendant is absolutely immune from Plaintiff's state-law claims for monetary damages against Defendant in his official capacity.

Defendant is therefore entitled to summary judgment on all monetary-damages claims against him in his official capacity.

## V. CONCLUSION

Qualified immunity provides no protection "for the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quotation omitted). Defendant has given the court no reason to believe that he did not knowingly act beyond the bounds of his authority in acting alone and outside his jurisdiction in obtaining a warrant that allowed him to conduct a startlingly comprehensive search of Plaintiff's cell phone. For that reason, his motion for summary judgment will be denied as to the individual-capacity claims. But because Plaintiff has not made any showing of a policy or custom that would make Defendant

liable under § 1983 in his official capacity, and because Alabama law makes Defendant absolutely immune from the state-law claims for monetary damages against him in his official capacity, his motion for summary judgment will be granted on the official-capacity claims.

\*\*\*

It is ORDERED:

(1)  Defendant's motion for summary judgment (Doc. # 48) is GRANTED as to all claims against Defendant in his official capacity for monetary damages and DENIED as to all claims against Defendant in his individual capacity.

(2)  The pretrial conference in this matter is CONTINUED to **August 1, 2019**, in Montgomery, Alabama.   Trial is CONTINUED to **September 30, 2019**, in Dothan, Alabama.

(3)  The deadlines in Sections 9, 10, and 11 of the Uniform Scheduling Order (Doc. # 40) are EXTENDED from April 19, 2019, to **June 18, 2019**.   All other deadlines remain in effect.

DONE this 18th day of March, 2019.

_____
/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE